# PHILKO AVIATION, INC. *v.* SHACKET ET UX.

No. 82–342.   Argued April 20, 1983—Decided June 15, 1983

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, MARSHALL, BLACKMUN, POWELL, REHNQUIST, and STEVENS, JJ., joined. O'CONNOR, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 414.

*Leslie R. Bishop* argued the cause for petitioner. With him on the briefs were *Donald B. Garvey* and *John N. Dore.*

*James C. Murray, Jr.,* argued the cause for respondents. With him on the brief was *Lee Ann Watson.**

JUSTICE WHITE delivered the opinion of the Court.

This case presents the question whether the Federal Aviation Act of 1958 (Act), 72 Stat. 737, as amended, 49 U. S. C. § 1301 *et seq.* (1976 ed. and Supp. V), prohibits all transfers of title to aircraft from having validity against innocent third parties unless the transfer has been evidenced by a written instrument, and the instrument has been recorded with the Federal Aviation Administration (FAA). We conclude that the Act does have such effect.

On April 19, 1978, at an airport in Illinois, a corporation operated by Roger Smith sold a new airplane to respondents. Respondents, the Shackets, paid the sale price in full and took possession of the aircraft, and they have been in possession ever since. Smith, however, did not give respondents the original bills of sale reflecting the chain of title to the plane. He instead gave them only photocopies and his assurance that he would "take care of the paperwork," which the Shackets understood to include the recordation of the original bills of sale with the FAA. Insofar as the present record

**J. Arthur Mozley* and *Donald R. Andersen* filed a brief for the Aircraft Finance Association as *amicus curiae* urging reversal.

reveals, the Shackets never attempted to record their title with the FAA.

Unfortunately for all, Smith did not keep his word but instead commenced a fraudulent scheme. Shortly after the sale to the Shackets, Smith purported to sell the same airplane to petitioner, Philko Aviation. According to Philko, Smith said that the plane was in Michigan having electronic equipment installed. Nevertheless, Philko and its financing bank were satisfied that all was in order, for they had examined the original bills of sale and had checked the aircraft's title against FAA records.[1] At closing, Smith gave Philko the title documents, but, of course, he did not and could not have given Philko possession of the aircraft. Philko's bank subsequently recorded the title documents with the FAA.

After the fraud became apparent, the Shackets filed the present declaratory judgment action to determine title to the plane. Philko argued that it had title because the Shackets had never recorded their interest in the airplane with the FAA. Philko relied on § 503(c) of the Act, 72 Stat. 773, as amended, 49 U. S. C. § 1403(c), which provides that no conveyance or instrument affecting the title to any civil aircraft shall be valid against third parties not having actual notice of the sale, until such conveyance or other instrument is filed for recordation with the FAA. However, the District Court awarded summary judgment in favor of the Shackets, *Shacket* v. *Roger Smith Aircraft Sales, Inc.*, 497 F. Supp. 1262 (ND Ill. 1980), and the Court of Appeals affirmed, reasoning that § 503(c) did not pre-empt substantive state law regarding title transfers, and that, under the Illinois Uniform Commercial Code, Ill. Rev. Stat., ch. 26, ¶ 1–101 *et seq.* (1981), the Shackets had title but Philko did not. 681 F. 2d 506 (1982). We granted certiorari, 459 U. S. 1069 (1982), and we now reverse and remand for further proceedings.

---

[1] It is perhaps noteworthy, however, that Philko's title search did not even reveal that the seller, Smith's corporation, owned or ever had owned the subject airplane.

Section 503(a)(1) of the Act, 49 U. S. C. § 1403(a)(1), directs the Secretary of Transportation to establish and maintain a system for the recording of any "conveyance which affects the title to, or any interest in, any civil aircraft of the United States." Section 503(c), 49 U. S. C. § 1403(c), states:

"No conveyance or instrument the recording of which is provided for by [§ 503(a)(1)] shall be valid in respect of such aircraft . . . against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Secretary of Transportation."

The statutory definition of "conveyance" defines the term as "a bill of sale, contract of conditional sale, mortgage, assignment of mortgage, or other instrument affecting title to, or interest in, property." 49 U. S. C. § 1301(20) (1976 ed., Supp. V). If § 503(c) were to be interpreted literally in accordance with the statutory definition, that section would not require every transfer to be documented and recorded; it would only invalidate unrecorded title *instruments*, rather than unrecorded title *transfers*. Under this interpretation, a claimant might be able to prevail against an innocent third party by establishing his title without relying on an instrument. In the present case, for example, the Shackets could not prove their title on the basis of an unrecorded bill of sale or other writing purporting to evidence a transfer of title to them, even if state law did not require recordation of such instruments, but they might still prevail, since Illinois law does not require written evidence of a sale "with respect to goods for which payment has been made and accepted or which have been received and accepted." Ill. Rev. Stat., ch. 26, ¶ 2–201(3)(c) (1981).

We are convinced, however, that Congress did not intend § 503(c) to be interpreted in this manner. Rather, § 503(c) means that every aircraft transfer must be evidenced by an

instrument, and every such instrument must be recorded, before the rights of innocent third parties can be affected. Furthermore, because of these federal requirements, state laws permitting undocumented or unrecorded transfers are pre-empted, for there is a direct conflict between § 503(c) and such state laws, and the federal law must prevail.[2]

These conclusions are dictated by the legislative history. The House and House Conference Committee Reports, and the section-by-section analysis of one of the bill's drafters, all expressly declare that the federal statute "requires" the recordation of "every transfer . . . of any interest in a civil aircraft."[3]   The House Conference Report explains: "This section requires the recordation with the Authority of every transfer made after the effective date of the section, of any interest in a civil aircraft of the United States.   The conveyance evidencing *each such transfer* is to be recorded with an index in a recording system to be established by the Authority."[4]   Thus, since Congress intended to require the recordation of a conveyance evidencing *each transfer* of an interest in aircraft, Congress must have intended to pre-empt any state law under which a transfer without a recordable conveyance would be valid against innocent transferees or lienholders who have recorded.

---

[2] U. S. Const., Art. VI, cl. 2; *Pacific Gas & Electric Co.* v. *State Energy Resources Conservation & Development Comm'n,* 461 U. S. 190, 204 (1983); *Fidelity Federal Savings & Loan Assn.* v. *De la Cuesta,* 458 U. S. 141, 153 (1982); *Jones* v. *Rath Packing Co.,* 430 U. S. 519, 525–526 (1977).

[3] H. R. Conf. Rep. No. 2635, 75th Cong., 3d Sess., 74 (1938) (emphasis added); H. R. Rep. No. 2254, 75th Cong., 3d Sess., 9 (1938); Hearings on S. 3760 before the Senate Committee on Commerce, 75th Cong., 3d Sess., 9 (1938) (section-by-section analysis of C. M. Hester, Assistant General Counsel, Treasury Dept.).   Section 503(c) of the present Act is derived from § 503(b) of the Civil Aeronautics Act of 1938, 52 Stat. 1006.   The only pertinent legislative history that we have found is that relating to the passage of the original 1938 provision.

[4] H. R. Conf. Rep. No. 2635, *supra,* at 74 (emphasis added).   The "Authority" mentioned in the quotation is the Civil Aeronautics Authority, the predecessor of the FAA.

Any other construction would defeat the primary congressional purpose for the enactment of § 503(c), which was to create "a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft." Hearings on H. R. 9738 before the House Committee on Interstate and Foreign Commerce, 75th Cong., 3d Sess., 407 (1938) (testimony of F. Fagg, Director of Air Commerce, Dept. of Commerce). Here, state law does not require any documentation whatsoever for a valid transfer of an aircraft to be effected. An oral sale is fully valid against third parties once the buyer takes possession of the plane. If the state law allowing this result were not pre-empted by § 503(c), then any buyer in possession would have absolutely no need or incentive to record his title with the FAA, and he could refuse to do so with impunity, and thereby prevent the "central clearing house" from providing "ready access" to information about his claim. This is not what Congress intended.[5]

In the absence of the statutory definition of conveyance, our reading of § 503(c) would be by far the most natural one, because the term "conveyance" is first defined in the dictionary as "the action of conveying," i. e., "the act by which title to property . . . is transferred." Webster's Third New International Dictionary 499 (P. Gove ed. 1976). Had Congress defined "conveyance" in accordance with this defini-

---

[5] Although the recording system ideally should allow any transferee who has checked the FAA records to acquire his interest with the certain knowledge that the transferor's title is clear, we recognize that the present system does not allow for such certainty, because there is a substantial lag from the time at which an instrument is mailed to the FAA to the time at which the FAA actually records the instrument. Thus, if the owner of an airplane grants a lien on it to Doe on one day and attempts to sell it to Roe on the following day, Roe might erroneously assume, based on a search of the FAA records, that his vendor has clear title to the plane, even if Doe had promptly mailed the documents evidencing his lien to the FAA for recordation.

tion, then § 503(c) plainly would have required the recordation of every transfer. Congress' failure to adopt this definition is not dispositive, however, since the statutory definition is expressly not applicable if "the context otherwise requires." 49 U. S. C. § 1301 (1976 ed. and Supp. V). Even in the absence of such a caveat, we need not read the statutory definition mechanically into § 503(c), since to do so would render the recording system ineffective and thus would defeat the purpose of the legislation. A statutory definition should not be applied in such a manner. *Lawson* v. *Suwannee Fruit & S.S. Co.*, 336 U. S. 198, 201 (1949). Accordingly, we hold that state laws allowing undocumented or unrecorded transfers of interests in aircraft to affect innocent third parties are pre-empted by the federal Act.

In support of the judgment below, respondents rely on *In re Gary Aircraft Corp.*, 681 F. 2d 365 (CA5 1982), which rejected the contention that § 503 pre-empted all state laws dealing with priority of interests in aircraft. The Court of Appeals held that the first person to record his interest with the FAA is not assured of priority, which is determined by reference to state law.[6] We are inclined to agree with this

---

[6] *Gary Aircraft* involved a contest between the holder of a security interest in two airplanes and a subsequent purchaser. Although the security interest holder recorded its interest in the planes prior to the time that the purchaser did so, the Court of Appeals held in favor of the purchaser, because Texas law governed priorities and, under Texas law, the purchaser was a buyer in the ordinary course of business who took free of the security interest. The security interest holder argued that Texas law was pre-empted by § 503(d) of the Act, 49 U. S. C. § 1403(d), which states that all instruments recorded with the FAA shall be "valid" without further recordation, but the court found that "validity" did not mean "priority." Instead, it only meant such "validity" as granted by state law. *Gary Aircraft* thus dealt with the question of the effect of recording under § 503(d), unlike the present case, which concerns the effect of nonrecording under § 503(c).

In support of its decision, the Court of Appeals, 681 F. 2d, at 510, cited *Haynes* v. *General Electric Credit Corp.*, 582 F. 2d 869 (CA4 1978); *Sanders* v. *M. D. Aircraft Sales, Inc.*, 575 F. 2d 1086 (CA3 1978); *State Securities Co.* v. *Aviation Enterprises, Inc.*, 355 F. 2d 225 (CA10 1966); *Northern*

rationale, but it does not help the Shackets. Although state law determines priorities, all interests must be federally recorded before they can obtain whatever priority to which they are entitled under state law. As one commentator has explained: "The only situation in which priority appears to be determined by operation of the [federal] statute is where the security holder has failed to record his interest. Such failure invalidates the conveyance as to innocent third persons. But recordation itself merely validates; it does not grant priority." Scott, Liens in Aircraft: Priorities, 25 J. Air L. & Commerce 193, 203 (1958) (footnote omitted). Accord, Sigman, The Wild Blue Yonder: Interests in Aircraft under Our Federal System, 46 So. Cal. L. Rev. 316, 324–325 (1973) (although recordation does not establish priority, "failure to record . . . serves to subordinate"); Note, 36 Wash. & Lee L. Rev. 205, 212–213 (1979).[7]

*Illinois Corp.* v. *Bishop Distributing Co.*, 284 F. Supp. 121 (WD Mich. 1968); and *Bitzer-Croft Motors, Inc.* v. *Pioneer Bank & Trust Co.*, 82 Ill. App. 3d 1, 401 N. E. 2d 1340 (1980). All of these cases involved facts similar to those of *Gary Aircraft* and are distinguishable on the same basis.

[7] Nothing in § 506 of the Act, 49 U. S. C. § 1406, provides support for a different conclusion. This provision states:

"The validity of any instrument the recording of which is provided for by [§ 503] shall be governed by the laws of the State, District of Columbia, or territory or possession of the United States in which such instrument is delivered, irrespective of the location or the place of delivery of the property which is the subject of such instrument."

Section 506 was passed in 1964 to rectify the "chaotic situation exist[ing] in the aircraft industry as a result of conflicting State rules relating to the choice of law governing the validity of instruments for the transfer of interests in tangible personal property." H. R. Rep. No. 1033, 88th Cong., 1st Sess., 1 (1963). Although § 506 provided a uniform federal choice-of-law rule for determining which State's laws govern the substantive validity of an instrument, § 506 did not repeal § 503(c)'s requirement that the instrument must be recorded before it obtains whatever validity to which it is entitled under the state law applicable pursuant to § 506. In enacting § 506, the Senate Committee Report observed that, under the § 503 regime, "to determine whether there are any encumbrances on [an] aircraft, it is only necessary to consult the central file," and no disapproval of this regime was expressed. S. Rep. No. 1060, 88th Cong., 2d Sess., 2 (1964).

414

In view of the foregoing, we find that the courts below erred by granting the Shackets summary judgment on the basis that if an unrecorded transfer of an aircraft is valid under state law, it has validity as against innocent third parties.  Of course, it is undisputed that the sale to the Shackets was valid and binding as between the parties.  Hence, if Philko had actual notice of the transfer to the Shackets or if, under state law, Philko failed to acquire or perfect the interest that it purports to assert for reasons wholly unrelated to the sale to the Shackets,[8] Philko would not have an enforceable interest, and the Shackets would retain possession of the aircraft.  Furthermore, we do not think that the federal law imposes a standard with which it is impossible to comply. There may be situations in which the transferee has used reasonable diligence to file and cannot be faulted for the failure of the crucial documents to be of record.[9]  But because of the manner in which this case was disposed of on summary judgment, matters such as these were not considered, and these issues remain open on remand.  The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE O'CONNOR, concurring in part and concurring in the judgment.

I join the opinion of the Court except to the extent that it might be read to suggest this Court's endorsement of

---

[8] For example, if the instrument evidencing the transfer of the aircraft from Smith's corporation to Philko failed to comply with formal requisites of Illinois law, then Philko might have no enforceable interest at all in the plane, in which case the Shackets would retain possession.  This does not mean, of course, that Philko can be deemed to have no interest in the plane on the ground that, due to the sale to the Shackets, under Illinois law Smith had no interest to transfer to Philko.

[9] See, e. g., *State Securities Co.* v. *Aviation Enterprises, Inc.*, *supra*, at 228 (buyer mailed its bill of sale to the FAA for recordation, but the FAA refused to record it).  There is no indication in the record now before us that the Shackets made a prompt attempt to record.

the view that one who makes a reasonably diligent effort to record will obtain the protections ordinarily reserved for recorded interests. I would express no opinion on that question, for it is not before us and has not been addressed in brief or in argument or, indeed, in the statute.