In re AIR VERMONT, INC. and North Atlantic Airlines, Inc., Debtors.

AIR VERMONT, INC. and North Atlantic Airlines, Inc., Plaintiffs,

v.

BEECH ACCEPTANCE CORPORATION, Defendant.

Bankruptcy Nos. 84–19, 84–17.

United States Bankruptcy Court, D. Vermont.

Oct. 30, 1984.

See also Bkrtcy., 44 B.R. 440; 44 B.R. 446.

Brian Dempsey, Barre, Vt., for debtor.

Alan D. Port, Burlington, Vt., for Beech Acceptance Corp.

MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The debtor seeks an adjudication of contempt as to Beech Acceptance Corporation ("Beech") and a turnover order with respect to an aircraft in Beech's possession, identified as Beechcraft Model C–99, Serial No. U–181, F.A.A. No. N62936 ("C–99"). Beech seeks a judgment that the estate has no interest in the C–99.

## FACTS

The material facts are not in dispute. In 1982 Beech Aircraft Corporation sold the C–99 to Transwestern of California, Ltd. ("Transwestern"), who at the time of sale granted Beech a purchase money equipment security interest in the C–99. The security agreement provides, *inter alia* that (i) any sale or encumbrance by Transwestern of the C–99 constitutes a default; (ii) no waiver by Beech of any default shall be effective unless in writing; (iii) without Beech's prior written consent Transwestern will not sell or otherwise transfer or encumber the C–99 or any interest therein, or offer to do so; (iv) the written security agreement constitutes the entire agreement between Beech and Transwestern and there are no verbal understandings, agreements or representations not expressly set forth in the writing; and, (v) the written agreement shall not be changed orally, but only by a writing signed by both parties. Following the sale and purchase, Beech filed the security agreement and the underlying promissory note with the Aircraft Registration Branch of the Federal Aviation Administration ("F.A.A.") and Transwestern filed the relevant aircraft bill of sale and an aircraft registration application.

Subsequently, and prior to the commencement, on January 31, 1984, of the instant case, Transwestern either leased or sold the C–99 to the debtor, Air Vermont, Inc. ("Air Vermont"). Thereafter, Air Vermont defaulted as to payments under the lease and filed a voluntary chapter 11 petition, whereupon Transwestern repossessed the C–99; alternately, Air Vermont defaulted as to pay-down in compliance with the Transwestern-Air Vermont transaction, precipitating Transwestern's post-petition act of repossession of the C–99. Notably, no document evidencing the Transwestern-Air Vermont transaction was ever filed with the F.A.A., nor has Air Vermont ever filed with the F.A.A. an aircraft registration application as to the C–99. Likewise, Air Vermont has not, in connection with this proceeding, filed with the court any document evidencing any transaction between it and Transwestern.

On May 25, 1984, Beech repossessed the C–99 from Transwestern, as Transwestern was in arrears as to pay-down under the Beech-Transwestern purchase and sale agreement. In connection with the repossession Beech filed a Certificate of Repossession of Encumbered Aircraft and an aircraft registration application with the F.A.A. The recorded certificate of repossession recites that Transwestern breached its obligations under the relevant security agreement and promissory note, and that Beech "by virtue of such act of repossession divested the said Transwestern of California, Ltd., and any and all persons claiming by, through or under him, of any and all claims they had or may have had" to the C–99. A civil aircraft of the United States, the C–99 is now in the possession of Beech.

Air Vermont is an air carrier operating under a certificate of convenience and necessity issued by the Civil Aeronautics Board. On the schedules of property which Air Vermont filed in connection with its chapter 11 petition, Air Vermont did not claim a proprietary interest in the C–99, that is, Air Vermont did not list the C–99 as an asset of the estate. Neither prior nor subsequent to filing for relief has Air Vermont sought to amend its schedules to claim any equitable or legal interest in the C–99. At no time has Air Vermont cured or offered to cure any arrearages in payments with respect to either the Transwestern-Air Vermont or the Beech-Transwestern transactions.

Although Beech was noticed as to the commencement of the instant case prior to repossessing the C–99 from Transwestern, it is not alleged that prior to such act of repossession Beech had knowledge of the Transwestern-Air Vermont transaction.

## DISCUSSION

The issues are whether Air Vermont is entitled to recover possession of the C–99 from Beech, and whether Beech is in contempt of this court with respect to its postpetition act of repossession of the C–99 from Transwestern. At a pre-trial conference held on October 5, 1984, the parties submitted the matter for determination based on the documents and records on the case. For the reasons which follow, Air Vermont has no interest in the C–99 to support a turnover order, and Beech is not in contempt for repossessing the C–99 from Transwestern.

## MOTION FOR TURNOVER OF PROPERTY

To prevail on its motion for a turnover of the C–99, Air Vermont must demonstrate that Beech is wrongfully in possession, as against Air Vermont, of the C–99. *See, Matter of Gary Aircraft Corp.*, 681 F.2d 365, 373 (5th Cir.1982). However, the evidence in the case indicates that the proprietary claim of Air Vermont to the C–99 is ill founded. The long and the short of it is that Beech as owner is in possession of the C–99 as of right, Air Vermont having at no time during the pendency of this proceeding demonstrated a factual basis for its proprietary claim to the C–99. Further, if the transaction between Air Vermont and Transwestern be deemed a lease rather than a sale, the facts and the law also conclusively establish that Air Vermont nevertheless has no claim to the C–99 superior to the claim of Beech.

■ Assuming the transaction between Air Vermont and Transwestern with respect to the C–99 was a sale as Air Vermont contends, Memorandum of Law in Opposition to Beech Acceptance Corporation's Motion for Relief at p. 2, the claim of Air Vermont to the C–99 fails. The facts are that at the time of the alleged sale of the C–99 by Transwestern to Air Vermont, Beech held a perfected purchase money equipment security interest in the C–99 by reason of having cause to be filed with the F.A.A., prior to the purchase and sale alleged by Air Vermont, a security agreement granting Beech a purchase money security interest in the C–99. The terms of the recorded security interest, of which Air Vermont had either constructive or actual knowledge prior to entering into the transaction with Transwestern, forbade Transwestern from selling, transferring, encumbering, offering to sell, offering to transfer, or offering to encumber the C–99 or any interest therein. In view of the fact that, prior to entering into the transaction with Transwestern, Air Vermont had knowledge that the transfer to Air Vermont of the C–99 or any interest therein was in violation of Beech's perfected security interest, Air Vermont took the C–99 subject to Beech's security interest. *See,* 9A Vt.Stat.Ann. (U.C.C.) § 9–307 Uniform Laws Comments 2, Cal.U.C.C. § 9307.

Not material to the foregoing result is the dispute of fact with respect to whether Transwestern was or was not a dealer in aircraft. Assuming *arguendo* that Transwestern were a dealer in aircraft, the foregoing result would hold, for the reason that, at the time of the Transwestern-Air Vermont transaction, Air Vermont was not a bona fide purchaser in good faith without notice as that term of art is construed at law. *See,* U.C.C. § 1–201(9), Cal.U.C.C. § 1201(9). As Air Vermont has proved no waiver, relinquishment, or termination of the security interest held by Beech, Air Vermont took the C–99 from Transwestern subject to the perfected equipment security interest of Beech. *See,* U.C.C. §§ 1–201(9), 9–307 Uniform Laws Comments.

The F.A.A. file reveals, now as at all relevant times, that record title to the C–99 is held by Transwestern. Consistent with the F.A.A. record, Air Vermont claimed no proprietary interest in the C–99 on bankruptcy day. Except by means of the instant motion for contempt and motion for

turnover of property, Air Vermont has never asserted an ownership interest in the C–99, either in this court or by way of filing documentation with the F.A.A. Air Vermont has it that Air Vermont could buy the C–99 from Transwestern in knowing violation of Beech's perfected purchase money equipment security interest and yet take the C–99 free and clear of Beech's lien, provided only that Transwestern is a dealer in aircraft. Air Vermont cites no authority for this proposition, and the relevant statutes preclude the court from adopting the tortured construction of the term "buyer in the ordinary course of business" and the equally strained interpretation of case law which Air Vermont urges on the court. In part, U.C.C. section 1–201(9) provides:

"'Buyer in the ordinary course of business' means a person who, in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods, buys in ordinary course from a person in the business of selling goods of that kind..."

Such a buyer takes free of a security interest created by his seller, even if the interest is perfected and even if the buyer knows of its existence. U.C.C. § 9–307 Uniform Laws Comments 2. However, the buyer takes subject to the perfected security interest if he knows that the sale is in violation of some term in the security agreement not waived by the words or conduct of the secured party. *Id.*

■ The burden of proving buyer in the ordinary course of business status rests with the party claiming such status. *Matter of Gary Aircraft Corp., supra* at *id.* As a purchaser of an airplane subject to a prior recorded security interest, the burden is on Air Vermont to prove it is properly afforded buyer in the ordinary course of business status. Air Vermont has not and cannot make such proof, for the reason that it had knowledge that the Transwestern-Air Vermont transaction was in violation of Beech's prior recorded purchase money equipment security interest. The authority which has developed on this

point makes clear that the protection afforded to the buyer in the ordinary course of business does not take effect where the buyer has knowledge at the time of sale that a purchase is in violation of a perfected security interest. *See, e.g., Matter of Gary Aircraft Corp., supra,* 681 F.2d at 374 and at *id.* n. 13 and authorities cited.

■ As case law further makes clear, a remote buyer may not avoid the effect of U.C.C. sections 1–201(9) and 9–307(1) on the ground that the perfected security interest, which the remote buyer seeks to escape, was not created by the remote buyer's immediate seller. *See, e.g., Matter of Gary Aircraft, supra,* 681 F.2d at 377 and authorities cited. Thus Air Vermont (remote buyer) may not, under U.C.C. section 2–403(1), avoid Beech's security interest on the ground that Air Vermont did not deal with Beech but dealt only with Transwestern (remote buyer's immediate seller). *Id.*

■ There is a further fundamental reason why Air Vermont may not prevail on its turnover motion. The Federal Aviation Act prohibits all transfers of title to aircraft from having validity against innocent third parties unless the transfer is evidenced by a written instrument and the instrument has been recorded with the F.A.A. The relevant statute is 49 United States Code, section 1403(c), which provides:

No conveyance or instrument the recording of which is provided for...shall be valid in respect of such aircraft...against any person other than the person by whom the conveyance or other instrument is made or given...until such conveyance or other instrument is filed for recordation.

Section 503 requires that "every aircraft transfer must be evidenced by an instrument, and every such instrument must be recorded, before the rights of innocent third parties can be affected." *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 103 S.Ct. 2476, 2478, 76 L.Ed.2d 678 (1983). Conversely, no conveyance or instrument affecting the title to any civil aircraft is

valid against third parties without notice of the sale until such conveyance or instrument is filed for recordation with the F.A.A. *South Shore Bank v. Tony Mat., Inc.*, 712 F.2d 896, 897 (3d Cir.1983). Since section 1403(c) requires the recordation of every transfer of any interest in a civil aircraft of the United States, *see*, S.Rep. No. 1661, 75th Cong., 3d Sess., p. 74 (1938); H.R.Rep. No. 2254, 75th Cong., 3d Sess., p. 9 (1938), Congress intended to preempt any state law under which a transfer without a recordable conveyance would be valid as against innocent transferees or lienholders who have recorded. *Philko Aviation, Inc. v. Shacket, supra,* 103 S.Ct. at 2479. Any other construction would defeat the primary congressional purpose for the enactment of section 1403(c). *Id.* The bottom line is that the first person to record a proprietary interest in the C–99 was Beech, and that interest has never been waived or modified. No instrument with respect to the Transwestern-Air Vermont transaction was ever filed with the F.A.A. Even had such an instrument, as to a transaction occurring subsequent to Beech's filing, been filed, such filing, absent proof of waiver on the part of Beech, would not operate to divest Beech of any interest spoken to in its recorded instrument.

Without proof but undaunted, Air Vermont argues that Beech was no stranger to the Transwestern-Air Vermont transaction and that therefore Beech is not an innocent third party afforded the protections of section 1403(c). The state of the evidence counsels otherwise. The result is that Air Vermont at no time held any legal interest in the C–99. The filing of the Certificate of Repossession by Beech was a mere *coup de grace.*

## BEECH'S MOTION UNDER CODE SECTION 1110

█ Having contended that the Transwestern-Air Vermont transaction was a sale and that Beech was no stranger to the bargain, Air Vermont flip-flops to argue that Beech was a stranger to the bargain in the event the transaction be found to be a lease. Assuming the transaction was a lease, Beech is entitled to relief under Code section 1110 in any event, regardless of whether Beech was a party to the lease or was only a seller to Transwestern who, acting alone, leveraged the lease. In relevant part, Code section 1110 provides:

(a) The right of a secured party with a purchase-money equipment security interest in...aircraft...that are...leased to...a debtor that is an air carrier operating under a certificate of convenience and necessity issued by the Civil Aeronautics Board, to take possession of such equipment in compliance with the provisions of a purchase-money equipment security agreement...is not affected by section 362 or 363 of this title or by any power of the court to enjoin such taking of possession, unless—

(1) before 60 days after the date of the order for relief under this chapter, the [debtor]...agrees to perform all obligations...that become due on or after such date under such security agreement...and

(2) any default, other than a default of a kind specified in section 362(b)(2) of this title, under such security agreement...

(A) that occurred before such date is cured before the expiration of such 60-day period; and

(B) that occurs after such date is cured before the later of—

(i) 30 days after the date of such default; and

(ii) the expiration of such 60-day period.

The section overrides the automatic stay of Code section 362(a) or any power of the court to enjoin the taking of possession of leased, conditionally sold, or liened civil aircraft of the United States, unless the debtor in possession or trustee cures all prior defaults (other than defaults under *ipso facto* bankruptcy clauses) within 60 days after the commencement of the case. Only during the first 60 days of the proceeding does the automatic stay apply to prevent foreclosure on or repossession of such civil aircraft in compliance with the terms of a

security agreement. House Report No. 595, 95th Cong., 1st Sess. 405 (1977); Senate Report No. 989, 95th Cong., 2d Sess. 116 (1978).

For the reasons that prior to the end of the 60-day statutory period, Air Vermont did not agree to assume Transwestern's obligations to Beech under Beech's recorded promissory note, and that Air Vermont did not cure prior defaults in payments with respect to the C–99, Beech, the title holder of record, was entitled to repossess the C–99 beginning the sixty-first day following the order for relief in this case. As the legislative history to Code section 1110 clarifies, the repossessor need not have dealt directly with the repossessee to be afforded the remedy of the section:

> The effect of this section will be the same if the debtor has granted the security interest to the financer or if the debtor is leasing equipment from a financer that has leveraged the lease and leased the equipment subject to the security interest of a third party.

House Report No. 595, 95th Cong., 1st Sess. 405 (1977); Senate Report No. 989, 95th Cong., 2d Sess. 116 (1978). Not material here is whether Beech dealt with Air Vermont. The effect of the section is the same whether Air Vermont granted a security interest to Beech or whether Air Vermont leased the C–99 from Transwestern, who as sole actor leased the C–99 subject to the security interest of Beech.

## MOTION FOR CONTEMPT

■ Without alleging that Beech repossessed the C–99 before the sixty-first day following the order for relief in this case, Air Vermont alleges that Beech is in contempt of this court for repossessing the C–99 in violation of the automatic stay. The allegation does not pass muster. If Beech repossessed the C–99 after the sixtieth day of the case, Beech, on the facts, could not be in violation of the automatic stay, for the reason that the recorded security agreement reserved to Beech all remedies allowed by law in the event of a default. Repossession of the collateral by the secured party in the event of default was a remedy contemplated under the security agreement. See, Promissory Note, Security Agreement, and Truth in Lending Disclosure Statement, re Warranties and Covenants, para. 6. Thus Beech's repossession of the C–99 was in compliance with the provisions of a purchase-money equipment security interest, as required by Code section 1110. Alternately, if Beech repossessed the C–99 before the sixty-first day of the case, Beech nevertheless may not be found in contempt, for the reason that it has not been shown that Beech had knowledge of the Transwestern-Air Vermont transaction at the time Beech repossessed the C–99 from Transwestern. Beech was noticed as to the commencement of the case because Beech had been a vendor to Air Vermont as vendee, of certain goods which are not the subject matter of the instant motions. Such notice does not make Beech omniscient as to Air Vermont's hidden dealings with Transwestern.

In part Code section 362(a) provides that the filing of a petition for relief commencing a case operates as a stay, applicable to all persons, of any act to obtain possession of, exercise control over, or enforce any lien against property of the estate. Assuming, then, that bare possession is an equitable interest encompassed by Code section 541(a) so that the C–99 became property of the estate on bankruptcy day, nevertheless, at the time of repossessing the aircraft, Beech, on the state of the evidence in the case, lacked the elements of knowledge and wilfullness that are ingredient to a finding of contempt. See, e.g., In re Bray Enterprises, Inc., 38 B.R. 75 (Bankr.D.Vt.1984); In re Porter, 25 B.R. 425 (Bankr.D.Vt.1982); In re Harlow, 12 B.R. 1 (Bankr.D.Vt.1981).

The instant case is distinguishable from the case Air America, Inc. v. Hatton Bros., Inc. ("Air America"), 570 F.Supp. 747 (S.D.Fla.1983). There, the party adjudged in contempt had refused to comply with a distinct court order directing it to turn over possession of an aircraft. Here, there has been no such contumacious non-compliance with a court order. Further, in

*Air America* the party seeking to keep possession of the aircraft had been a party to the conveyance at issue; thus, the turnover complainant argued on firm ground that the protections afforded an innocent third party were unavailable to the party seeking to keep possession. In the instant case, however, the party seeking to keep possession was not a party to the transaction under which Air Vermont claims, *i.e.* Beech was not a party to the Transwestern-Air Vermont transaction. Thus, as discussed *supra*, Air Vermont, the turnover complainant, may not clothe itself with rights which operate in derogation of Beech's statutory rights.

### ORDER

Now, therefore, IT IS ORDERED,

that the debtor's motion for contempt is DISMISSED;

that the debtor's motion for a turnover of the C–99 is DENIED; and

that Beech Acceptance Corporation's motion for relief under Bankruptcy Code section 1110 is GRANTED.