In re AIR VERMONT, INC. and North Atlantic Airlines, Inc., Debtors.

COMAIR, INC., Appellant,

v.

AIR VERMONT, INC., Appellee.

Civ. A. No. 84–209.

United States District Court, D. Vermont.

Nov. 29, 1984.

Paul H. Ode, Jr., Downs, Rachlin and Martin, South Burlington, Vt., Genina C. Bowman, Keating, Muething & Klekamp, Cincinatti, Ohio, for appellant.

Joseph C. Palmisano, Barre, Vt., for appellee Air Vermont, Inc., and North Atlantic Airlines, Inc.

Douglas J. Wolinsky, Saxer, Anderson & Wolinsky, Burlington, Vt., for appellee Gene R. Kazlow.

## OPINION

BILLINGS, District Judge.

This proceeding is before the Court on the appeal by Comair, Inc. from the order of the Bankruptcy Court for the District of Vermont filed on May 4, 1984. The order of the Bankruptcy Court (Marro, J.), *inter alia*, declared the security interest of Comair, Inc. in a Piper Navajo Chieftain PA 31–350 to be invalid as to the debtor in possession.

For the reasons recited below, that order is AFFIRMED.

## FACTS

On February 28, 1983, debtor Air Vermont purchased from Comair a 1977 Piper Navajo Chieftain PA 31–350 (hereafter "the aircraft"), bearing Federal Aviation Administration (FAA) serial number N72CZ, manufacturer serial number 31–7752154, left engine serial number L3661–61A and right engine serial number L261–68A. The purchase took place pursuant to a written purchase agreement, and Air Vermont financed the purchase by giving to Comair a promissory note, also dated February 28, 1983. The note was in the original principal amount of $125,000.00 plus interest at the rate of 16 percent per year, and was payable in sixty consecutive monthly installments of $3,000.00 between March 1, 1983 and February 1, 1988. On the same date, Air Vermont executed an Aircraft Security Agreement that granted Comair a purchase money security interest in the aircraft, in addition to two U.C.C.–1 financing statements that showed Comair's interest in the aircraft.

Comair subsequently filed one U.C.C.–1 financing statement with the Secretary of State of the State of Vermont on March 7, 1983 and the other U.C.C.–1 financing statement with the City Clerk's Office of South Burlington, Vermont on March 9, 1983. Comair did not file the Aircraft Security Agreement with the FAA Aircraft Registry in Oklahoma City, Oklahoma.

On January 31, 1984, Air Vermont filed in the United States Bankruptcy Court for the District of Vermont its petition for relief under chapter 11 of the United States Bankruptcy Code. Included in the property of the estate of the debtor was the aircraft.

On March 6, 1984 Comair filed with the Bankruptcy Court a Motion to Abandon Property. Among other property, Comair sought to regain possession of the aircraft. The Bankruptcy Court held hearings on the motion on March 12, 1984 and April 13, 1984. By order of May 4, 1984, the Bankruptcy Judge declared the security interest of Comair in the aircraft to be invalid as to

the debtor in possession. This timely appeal followed.

DISCUSSION

The two issues raised by appellant Comair before this Court are whether the filing of the two U.C.C.-1 financing statements in Vermont served to perfect the security interest of Comair in the aircraft and whether Comair had a perfected security interest in the aircraft despite the failure to record the aircraft security agreement with the FAA Aircraft Registry.

For both issues, the case of *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983), is controlling and dispositive.

The case of *Philko*, in the words of Justice White writing for the majority of the Court, "present(ed) the question whether the Federal Aviation Act of 1958 (Act), 49 U.S.C. §§ 1301 *et seq.*, prohibits all transfers of title to aircraft from having validity against innocent third parties unless the transfer has been evidenced by a written instrument, and the instrument has been recorded with the Federal Aviation Administration (FAA)." *Id.*, 103 S.Ct. at 2477. The answer of the Court to this question was that "(w)e conclude that the Act does have such effect." *Id.*, 103 S.Ct. at 2477.

In *Philko*, a corporation operated by one Roger Smith sold a new airplane to the Shackets. The Shackets paid the sale price in full and took possession of the plane. Smith gave to the Shackets only photocopies of the original bills of sale reflecting the chain of title to the plane, but assured them that he would "take care of the paperwork." The Shackets understood that the paperwork would include recordation of the original bills of sale with the FAA. *Id.*, 103 S.Ct. at 2477.

Smith did not keep his word. Not only did he fail to record the title documents with the FAA, but he also purported to sell the same airplane to Philko Aviation. Philko's bank subsequently recorded the original title documents with the FAA. The Shackets, who had retained possession of the plane, then filed a declaratory judgment action to determine title to the plane.

The District Court awarded summary judgment in favor of the Shackets, 497 F.Supp. 1262 (N.D.Ill.1980), and the Court of Appeals affirmed, 681 F.2d 506 (7th Cir.1982).

On appeal to the Supreme Court, Philko Aviation relied upon § 503(c) of the Federal Aviation Act of 1958, 49 U.S.C. § 1403(c), which provides that "(n)o conveyance or instrument the recording of which is provided for by (§ 503(a)(1)) shall be valid in respect to such aircraft ... against any person other than the person by whom the conveyance or other instrument is made or given ... until such conveyance or other instrument is filed for recordation in the office of the Secretary of Transportation." The Shackets contended that the section quoted, *supra*, did not preempt substantive state law regarding title transfers, and that under the Illinois Uniform Commercial Code, Ill.Rev.Stat., ch. 26, §§ 1–101 *et seq.*, they had title to the plane.

In reaching its decision that the Federal Aviation Act preempted state law, the Supreme Court closely examined the legislative history of § 503(c). That history stated that the purpose for the enactment of the section was to create "a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft." *Id.*, 103 S.Ct. at 2479, quoting Hearings before the House Comm. on Interstate and Foreign Commerce, 75 Cong., 3d Sess., p. 407 (April 1, 1938) (testimony of F. Fagg, Director of Air Commerce, Dept. of Commerce). In light of this congressional intent, the granting of effect to transfers recorded only with reference to state law would remove the need for individuals to record transfers with the FAA and would defeat the purpose of creating a "central clearing house." Since this would render the entire legislative scheme inoperative, the Supreme Court held that "state laws allowing undocumented or unrecorded transfers of interests in aircraft to affect innocent third parties are

preempted by the federal Act." *Id.*, 103 S.Ct. at 2480.

Comair's argument that it perfected its security interest in the aircraft by filing U.C.C.–1 financing statements in accordance with Vermont state law does not survive this holding of the Supreme Court. Were this Court, or any other federal court applying state law, to grant effect to fil-. ings under state law, there would exist no incentive for the parties to aircraft transfers to record their transactions with the FAA. Such a result would destroy the very uniformity that Congress sought to bring about by the enactment of this legislation.

Comair also argues that the failure of Air Vermont to register the aircraft with the FAA somehow exonerated Comair from its obligation to record the aircraft security agreement. This contention also falls under the holding in *Philko*. Comair, like the Shackets, failed to take appropriate prophylactic measures to ensure that the other party to the transaction performed the acts necessary for the appropriate recordation of the transfer. As a result, the transfer was ineffective. Just as the Shackets lost possession of the aircraft to Philko, so Comair loses priority to the debtor in possession.

Although this is a harsh result, to hold otherwise would permit parties to aircraft transfers to avoid the reach of 49 U.S.C. § 1403(c) merely by failing, intentionally or not, to record certain documents. Under the line of argument advanced by appellant Comair, these parties would retain all the rights that they sought in the aircraft, while at the same time undercutting the legislative scheme designed explicitly to concentrate the recording of all such interests in one place. Congress designed the scheme to promote the creation of a central clearing house for all legal interests in aircraft; to hold that parties to a transaction could unilaterally avoid the reach of this law is untenable.

For these reasons, the order of the Bankruptcy Judge is AFFIRMED.