SOUTH SHORE BANK, Plaintiff and Counterdefendant-Appellee, v. JOHNSON HYDRAULIC MANUFACTURING COMPANY, Defendant and Counterplaintiff and Third-Party Defendant-Appellant.

Third District    No. 3—84—0141

Opinion filed January 28, 1985.—Rehearing denied May 8, 1985.

Richard N. Molchan and Timothy L. Bertschy, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Franklin A. Nachman and Jennifer P. Ewers, both of Conklin & Adler, Ltd., of Chicago, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The question before us is whether a federally recorded security interest in an airplane is superior to the interest of a prior buyer of the same airplane in the ordinary course of business who first attempts to record the transfer of title 14 months after the security interest is recorded. We hold that it is.

In the interest of brevity, we will confine our discussion of a rather complex factual setting to those facts necessary to resolve this single issue. The airplane in question, a Piper Seneca, was purchased by Johnson Hydraulic Manufacturing Company (Johnson Hydraulic) on December 5, 1979, from H. & H. Aircraft (H. & H.) of Monroe, New York, a Piper Aircraft dealer. The plane was delivered to Johnson Hydraulic in Illinois by Howard Spaeth, president of H. & H. Spaeth told Ray Fauber, president of Johnson Hydraulic, that he would record the duly executed bill of sale with the Federal Aviation Administration. Fauber relied on Spaeth and took no action on his own initiative to record the transfer documents at that time.

Unfortunately, Spaeth proved to be untrustworthy. He failed to file the transfer documents. On January 21, 1980, Spaeth, on behalf of H. & H., obtained a loan at South Shore Bank (South Shore) of Quincy, Massachusetts, the plaintiff in this case. Spaeth purported to use the Piper Seneca as collateral. South Shore had had prior dealings with Spaeth and had financed a floor plan loan arrangement for H. & H. A title search of FAA records by South Shore understandably failed to disclose Spaeth's fraud. The loan was granted, and South Shore promptly filed its security agreement on the Piper Seneca with the FAA. Subsequently, Spaeth became involved in a financial dilemma, defaulted on his commitments to South Shore, and his long-time friends and financial backers at South Shore tried to work out a plan to keep their client afloat while still protecting South Shore's in-

terests in the various aircraft Spaeth had used as collateral. Under the plan, all such planes, except for a vintage model which remained in a San Diego museum, were to be returned to the Norwood, Massachusetts, airport so that they could be sold. In December of 1980, Spaeth falsely indicated that the Piper Seneca had not been delivered to Norwood because it was on loan to Johnson Hydraulic in Illinois. Samuel Peoples, second vice-president of South Shore, telephoned Fauber at Johnson Hydraulic to verify Spaeth's story and learned for the first time that Johnson Hydraulic claimed title to the plane as its purchaser. Further title searches requested by South Shore, however, failed to reveal any transfer of ownership or other interest affecting title subsequent to H. & H.'s acquisition excepting, of course, South Shore's recorded security interest.

Then, when Spaeth's fraud respecting the Piper Seneca became apparent to Johnson Hydraulic, it attempted, in April 1981, to record its ownership interest with the FAA. The FAA refused to record the proffered documents because of the prior recorded security interest.

Johnson Hydraulic attempted to sue South Shore, along with H. & H. and Spaeth, in Federal court for declaratory judgment. Lack of personal jurisdiction resulted in dismissal of the action against South Shore. Eight months later the instant suit was brought by South Shore in the Illinois State court system. Both parties moved for summary judgment. On May 6, 1983, the trial court granted Johnson Hydraulic's motion and denied South Shore's on grounds that under Illinois law the prior innocent purchaser for value had an interest superior to a later-recorded secured party even though the prior purchaser's interest was never recorded. (See *Shacket v. Roger Smith Aircraft Sales, Inc.* (N.D. Ill. 1980), 497 F. Supp. 1262, *aff'd sub nom. Shacket v. Philko Aviation, Inc.* (7th Cir. 1982), 681 F.2d 506, *cert. granted* (1982), 459 U.S. 1069, 74 L. Ed. 2d 630, 103 S. Ct. 487.) On the basis of the trial court's decision, and at Johnson Hydraulic's renewed request, the FAA issued a certificate of aircraft registration in Johnson Hydraulic's name on August 8, 1983.

In the meantime, South Shore appealed to this court from the trial court's decision on May 31, 1983. Then, on June 15 the United States Supreme Court handed down its opinion in the *Philko* case, reversing the decisions of the district and circuit courts. (*Philko Aviation, Inc. v. Shacket* (1983), 462 U.S. 406, 76 L. Ed. 2d 678, 103 S. Ct. 2476.) In a *per curiam* order we reversed and remanded this cause to the circuit court of Peoria County for reconsideration in light of the *Philko* decision.

The matter was reheard, and the trial court this time granted

South Shore's motion for reconsideration of its motion for summary judgment, declaring on the basis of *Philko* that South Shore's rights in the airplane were prior and superior to those of Johnson Hydraulic.

In this appeal, Johnson Hydraulic claims that the trial court erred in holding that the *Philko* decision was controlling. We cannot agree.

Since the reach of the *Philko* decision is the crux of the parties' dispute at this juncture, it is first necessary to set forth the factual setting of that case. The sham transactions laying the groundwork for litigation in *Philko* appear remarkably similar to those initiated by Spaeth here. In *Philko*, a corporation operated by Roger Smith sold a plane to the Shackets in April of 1978. The Shackets paid in full and took immediate possession of their purchase. Smith handed them photocopies of the transfer documents and assured the Shackets that he, Smith, would "take care of the paperwork." The Shackets accordingly failed to record any documents with the FAA; and Smith, rather than acting pursuant to his assurances to the Shackets, proceeded with a scheme to sell the airplane to Philko Aviation. Smith explained the absence of the aircraft with a story that it was being worked on in Michigan. Philko and its financing bank checked FAA records and were satisfied that the title to the aircraft was not encumbered by intervening transactions. The transaction was closed, and the bank recorded the title documents with the FAA. In an action for declaratory judgment, the district court applied the law of the State of Illinois (Ill. Rev. Stat. 1979, ch. 26, par. 1—101 *et seq.*) and held that the prior unrecorded bona fide purchasers (the Shackets) had priority interests in the airplane. The Seventh Circuit affirmed. Again applying State law, the court ruled that Philko could not obtain any title or interest in the aircraft as a secured party (rather than as a buyer in the ordinary course of business); and that, in any event, Smith had nothing to sell to Philko since both title and possession of the airplane resided with the Shackets so that, even if Philko were considered a purchaser instead of a secured party, the transaction could convey no interest to Philko.

The Supreme Court reversed on grounds of Federal preemption, holding that section 503(c) of the Federal Aviation Act of 1958 preempted conflicting State law.[1] Specifically, the court addressed the issue of "whether the Federal Aviation Act *** prohibits all transfers

---

[1]The Federal statute provides that no conveyance or instrument affecting the title to any civil aircraft shall be valid against third parties not having actual notice of the sale, until such conveyance or other instrument is filed for recordation with the FAA. 49 U.S.C. sec. 1403(c) (1976).

of title to aircraft from having validity against innocent third parties unless the transfer has been evidenced by a written instrument, and the instrument has been recorded with the Federal Aviation Administration." (462 U.S. 406, 407, 76 L. Ed. 2d 678, 681, 103 S. Ct. 2476, 2477.) The court held "that state laws allowing undocumented or unrecorded transfers of interests in aircraft to affect innocent third parties are preempted by the federal Act." (462 U.S. 406, 412, 76 L. Ed. 2d 678, 684, 103 S. Ct. 2476, 2480.

In reaching its conclusion, the court expressly declined to reach the issue which Johnson Hydraulic purports to present to this court on the instant facts--that is, whether State law determines priorities of conflicting interests in aircraft where both the security interest and the purchaser's interest are federally recorded.

In the present case, Johnson contends it exercised due diligence in attempting to have its interest in the Piper Seneca recorded promptly upon learning of Spaeth's fraud in April of 1981. We should recall that although its early requests for Federal recordation were denied by the FAA, eventually, in August of 1983, Johnson Hydraulic succeeded in this effort. A copy of its Federal certification of registration appears in the record before us.

Even were we to conclude, as Johnson Hydraulic urges, that the majority opinion in *Philko* left the door open for a "due diligence" exception to the court's Federal preemption holding, we do not find such exception applicable to the facts of this case. In our opinion, mere reliance on another to perform the ministerial duties of forwarding documents to the FAA for recording, even if shown, as here, to be a customary practice between the parties to a transaction, does not qualify the unrecorded interest-holder for a "due diligence exception" to the Federal recordation statute. Nor, as we see it, has due diligence been demonstrated by a prompt attempt to record upon learning of a fraud in the transaction some 14 months after the purchase is closed. (See *Philko Aviation, Inc. v. Shacket* (1983), 462 U.S. 406, 414, 76 L. Ed. 2d 678, 686, 103 S. Ct. 2476, 2481 (O'Connor, J., concurring in part).) The trial court on rehearing rejected Johnson Hydraulic's attempt to distinguish this case factually from Philko on grounds that the instant case represented a conflict between two recorded interests. We agree that the belated "recording" in this case was a nullity as against South Shore. In the instant case, as in *Philko*, the conflicting interests are between an unrecorded prior purchaser with possession (Johnson Hydraulic) and a federally recorded subsequent interest-holder without possession (South Shore). To permit the exception urged by Johnson Hydraulic on these facts surely would de-

feat the primary congressional purpose for enacting the Federal recordation statute, *i.e.*, "to create 'a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft.' " *Philko Aviation, Inc. v. Shacket* (1983), 462 U.S. 406, 411, 76 L. Ed. 2d 678, 683, 103 S. Ct. 2476, 2479 (quoting testimony of F. Fagg, Director of Air Commerce, Department of Commerce, Hearings before House Commission on Interstate and Foreign Commerce, 75 Cong., 2d Sess., page 407 (April 1, 1938)).

We agree with the trial court's conclusion on remand that the Supreme Court's decision in *Philko* controls the outcome of this case on grounds that, as against South Shore, the rights of Johnson Hydraulic obtained by purchasing the Piper Seneca in 1979 were invalidated by its failure to duly record the transfer documents with the FAA prior to South Shore's recordation. Accordingly, South Shore's interests in the airplane, as correctly determined by the circuit court, are superior to those of Johnson Hydraulic, and the trial court should be affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.