**In re AVCENTRAL, INC. Debtor.**

**No. 02–11525.**

United States Bankruptcy Court, D. Kansas.

Feb. 18, 2003.

Steven L. Speth, Speth & King, Wichita, KS, trustee.

D. Michael Case, Case, Moses, Zimmerman & Wilson, P.A., Wichita, KS, for Debtor.

### MEMORANDUM OPINION AND ORDER

ROBERT E. NUGENT, Chief Judge.

Secured creditor Joda LLC seeks relief from the automatic stay to pursue its state court foreclosure action against two DC–9

aircraft and their components. The trustee objected to Joda's motion claiming Joda failed to properly perfect its security interest. The parties have submitted this matter on stipulated facts. Each party has submitted briefs and, after careful review of the parties' respective papers and relevant authority, the Court is ready to rule.

AvCentral filed for chapter 7 relief on April 19, 2002. According to the schedules, the debtor was in the aircraft parts business and maintained a substantial inventory of parts. In October of 2000, the debtor purchased two DC–9 aircraft from a seller in Argentina and ferried them to an airfield in Oklahoma. Debtor granted security interests in these aircraft, their engines, and propellers to Joda pursuant to two separate security agreements. Under the terms of the security agreements, debtor granted liens in not only the aircraft as a whole, but also all of their parts.

Joda perfected its interest in the aircraft by filing its security agreements with the Federal Aviation Administration (FAA) pursuant to 49 U.S.C. § 44107(a)(1) and (a)(2). Joda did not file a financing statement under Article Nine of the Uniform Commercial Code (UCC). The parties stipulate that the aircraft were intact and whole at the time the security interests were granted. Yet they also stipulate that debtor was in the business of buying and "parting out" aircraft and that Joda knew when it made the loans to debtor that these aircraft would be disassembled and sold in parts. It is undisputed that debtor had no intention of operating the aircraft or reselling the aircraft intact.

Joda moved for stay relief and the Chapter 7 trustee Steven Speth objected, asserting that Joda's security interests were not properly perfected because they extended to what is in essence inventory rather than "aircraft" and, as such, should have been perfected at state law under the UCC.

The Court has jurisdiction of this case and of contested matters within it.[1] This contested matter is a core proceeding.[2]

██ The issue in this case is whether a creditor claiming security interests in aircraft acquired by the debtor for "parting out," but which were intact when the security interests were granted, must perfect its interests under 49 U.S.C. § 44107 rather than by filing a financing statement on inventory under the UCC. The trustee argues that to treat the aircraft parts as "aircraft" subject to federal law ignores their true intended use—as inventory held for resale. He reasons that because they actually constituted inventory, Joda's security interest in them should have been perfected by filing financing statements in the appropriate Secretary of State's office.[3]

The trustee argues that the ultimate intended use of the aircraft as parts mandates that they be treated as inventory for commercial law purposes. He states that because the aircraft were to be held for

1. 28 U.S.C. § 1334.

2. 28 U.S.C. § 157(b)(2)(G).

3. The parties do not discuss which version of Article Nine applies. Because this case was filed after the effective date of revised Article Nine in Kansas, July 1, 2001, the Court will apply revised Article Nine and its transition rules where appropriate. See Kan. Stat. Ann. § 84–9–701 Revisor's Note and § 84–9–702(a) (2001 Supp.). It is worth noting that as a practical matter, the revisions to Article Nine changed neither the method of perfection nor the place of filing for a security interest in inventory. Cf. Kan. Stat. Ann. § 84–9–302(1) and 9–401(1)(c) (1996) with Kan. Stat. Ann. § 84–9–310(a) and 9–501(a)(2) (2001 Supp.). It is not, however, apparent that Kansas law applies here. The transaction documents provide for Missouri law and the aircraft appear to have been in Oklahoma at the time of the transaction. As will be explained below, application of UCC Article Nine to this case will be of secondary concern at best.

immediate or ultimate sale, they are more properly classified as inventory.[4] While this may be an accurate statement of Kansas law, it ignores the matter of federal preemption. Because this case involves civil aircraft rather than, for instance, an inventory of miscellaneous hardware, federal perfection law applies.

The scope section of Article Nine rules out the application of the article to civil aircraft. KAN. STAT. ANN. § 84–9–109(c)(1) (2001 Supp.) provides that Article Nine does not apply to the extent that a statute, regulation or treaty of the United States preempts it. Further, KAN. STAT. ANN. § 84–9–311(a) (2001 Supp.) specifically states that filing a financing statement is neither necessary nor effective to perfect a security interest in property which is subject to federal law. With respect to civil aircraft, compliance with federal law filing requirements is the equivalent of filing a financing statement.[5] The Court notes the exception language in KAN. STAT. ANN. § 84–9–311(d) stating that while collateral is inventory held for sale by a person in the business of selling goods of its kind, section 9–311 does not apply to a security interest created by that person. For example, this provision subjects perfection of an automobile inventory to the financing statement requirements even though the state's certificate of title statute applies to automobiles.[6] The Court believes that the language in subsection (d) applies only to the extent the statute has not been preempted by a federal law. To hold otherwise would be to reach the untenable conclusion that section 9–311(d) somehow preempts the federal recording law.

The Federal Aviation Act ("the Act") established a central recording system for recording conveyances affecting "an interest in civil aircraft of the United States" as well as security instruments affecting an interest in engines, propellers, and stores of spare parts and appliances maintained by or for air carriers.[7] Debtor is not an "air carrier" as that term is defined in the Act[8] and that part of the statute relating to spare parts does not apply in this case.

However, the Act defines an "aircraft" as any "contrivance invented, used, or designed to navigate, or fly in, the air."[9] The DC–9s, as they were on October 1, 2000, were "aircraft." An "aircraft engine" is defined as an engine used to propel an aircraft including "a part, appurtenance, and accessory of the engine, except a propeller."[10] Propellers are separately defined.[11] Under the federal statutory definition, then, the planes in question were "aircraft" when the interests were taken. Perfection of a security interest in them was required under the Act and not under the UCC, whether or not the intact planes were deemed "inventory" by the parties.

4. *See Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293 (10th Cir.1986).

5. *See* KAN. STAT ANN. § 84–9–311(b) (2001 Supp.). This subsection further states that once the security interest is perfected in compliance with federal law, it remains perfected "notwithstanding a change in the use … of the collateral."

6. *See* Official UCC Comment 4, KAN STAT. ANN. § 84–9–311 (2001 Supp.).

7. *See* 49 U.S.C. § 44107(a)(1), (a)(2)(A) through (D). These sections also cover security interests in engines, propellers, appliances and spare parts *maintained by or for* an air carrier.

8. "Air carriers" are defined as United States citizens undertaking to provide air transportation by direct or indirect means. 49 U.S.C. § 40102(a)(2).

9. 49 U.S.C. § 40102(a)(6).

10. 49 U.S.C. § 40102(a)(7).

11. 49 U.S.C. § 40102(a)(36).

Even were this Court to conclude that under the principal use test, the aircraft were "inventory," they are not necessarily exempt from FAA recording. While the Act does not preempt the entirety of Article Nine, it does preempt state law as to the manner in which liens on aircraft and their components are perfected. This is the lesson of the Supreme Court's holding in *Philko Aviation, Inc. v. Shacket.*[12] In *Philko*, the Supreme Court held that because the clear intent of Congress was to require the recording of every conveyance, "Congress must have intended to pre-empt any state law under which a transfer without a recordable conveyance would be valid against innocent transferees or lienholders who have recorded."[13] In essence, all transfers of aircraft or any interest therein are invalid against third parties unless recorded with the FAA.[14] Bankruptcy trustees constitute such third parties. Compliance with the Title 49 filing requirements is the equivalent of filing a financing statement under Article Nine.[15]

Admittedly, timing plays a significant role in this case. Had the planes been disassembled when the interests were taken, it is not at all clear to the Court that federal recording would have been the appropriate method of perfection. An inventory of aircraft parts (other than engines or propellers) unattributable to any particular plane and not held as "spare parts" by or for an "air carrier" may very well fall outside of § 44107. Based on the current record, however, the Court can only conclude that the planes in question were still "aircraft" within the meaning of § 44107(a)(1) at the time the security interests were granted, and that security interests in them could only be perfected under federal law.[16]

The Court finds that Joda's security interests in the two DC–9 aircraft, their engines, and propellers are properly perfected under the Federal Aviation Act and need not have been perfected under Article Nine because the aircraft were whole and intact at the time the security interests were granted and the instruments recorded. There are no other controversies bearing on stay relief and the Court accordingly determines that cause exists to grant relief from the stay. Joda's motion for stay relief is GRANTED and it may enforce its security agreements in any manner permitted by nonbankruptcy law.

---

**12.** 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983).

**13.** 462 U.S. at 410, 103 S.Ct. 2476.

**14.** *See* 49 U.S.C. § 44108.

**15.** Kan. Stat. Ann. § 84–9–311 (2001 Supp.).

**16.** 462 U.S. at 410, 103 S.Ct. 2476. *See also, In re Equipment Leassors of Pennsylvania,* 235 B.R. 361 (E.D.Pa.1999).