**SOUTH SHORE BANK**

v.

**TONY MAT, INC. and H & H Aircraft Sales Inc.**

**Appeal of TONY MAT, INC.**

**No. 82–3455.**

United States Court of Appeals, Third Circuit.

Argued April 14, 1983.
Decided July 29, 1983.

Richard F. Stevens (argued), Herbert M. Rafner, Butz, Hudders & Tallman, Allentown, Pa., for appellant.

Susan L. Claypoole (argued), Duane, Morris & Heckscher, Philadelphia, Pa., for appellee.

Before HUNTER, WEIS, Circuit Judges, and GERRY,* District Judge.

**OPINION OF THE COURT**

PER CURIAM:

Tony Mat, Inc. ("Tony Mat") appeals from an order of the United States District Court for the Middle District of Pennsylvania granting summary judgment in favor of appellee South Shore Bank ("South Shore"). Tony Mat is a buyer who paid full price upon delivery of an airplane but who did not record its title with the Federal Aviation Administration ("FAA") until after the institution of this lawsuit. After the sale to Tony Mat, South Shore acquired a security interest in the same plane which it recorded immediately with the FAA. This appeal

* Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

requires us to decide which of the two conflicting interests in the airplane is superior. We agree with the district court and with the parties that there are no facts in dispute. Relying on the Supreme Court's decision in *Philko Aviation, Inc. v. Shacket,* — U.S. ——, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983), we will affirm.

## I.

In May of 1980, Tony Mat purchased a 1979 Piper airplane, Model No. PA 28–201T, Serial No. 28–7921063, from H & H Aircraft Sales, Inc. ("H & H"). Tony Mat paid full price for the airplane upon delivery. H & H indicated that it would do all the paperwork required in connection with the sale of the airplane. However, neither H & H nor Tony Mat recorded the sale with the FAA pursuant to the Federal Aviation Act of 1958 (the "Act"), 49 U.S.C. §§ 1301–1542 (1976 & Supp. V 1981), until after the institution of this lawsuit in February of 1982.

On June 30, 1980, South Shore made a loan to H & H and received a security interest in H & H's inventory, including the airplane. South Shore had previously checked the FAA registration system, and FAA records had indicated that H & H was the owner of the plane.[1] After South Shore made the loan it recorded its lien on the airplane with the FAA on July 20, 1980. Sometime thereafter H & H defaulted on the loan.

South Shore then instituted an action in district court seeking recovery from H & H of all amounts that H & H owed to the bank pursuant to the loan agreement. South Shore also sought a declaratory judgment that its right to the airplane were superior to those of Tony Mat. The clerk of the court entered a default judgment against H & H after it failed to defend.

South Shore thereafter filed a motion for summary judgment against Tony Mat. It argued that its title to the plane was superior to that of Tony Mat because Tony Mat had not recorded its interest in the airplane

with the FAA prior to South Shore's recordation of its lien on the plane. South Shore relied on section 503(c) of the Act, 49 U.S.C. § 1403(c) (1976), which provides that no conveyance or instrument affecting the title to any civil aircraft is valid against third parties without notice of the sale until such conveyance or instrument is filed for recordation with the FAA. The district court granted South Shore's motion for summary judgment, and this appeal followed.

On appeal Tony Mat argues that failure to comply with section 503 would not defeat its ownership interest in the plane as against South Shore's security interest. It relies on section 506 of the Act, 49 U.S.C. § 1406 (1976), which provides that the validity of an instrument, the recording of which is provided for in the Act, is governed by the laws of the state where the instrument is delivered. Tony Mat argues that, regardless of any failure to record with the FAA, it acquired rights in the airplane under state law that are superior to those of South Shore.

## II.

Section 503(a)(1) of the Act directs the Secretary of Transportation to establish and maintain a system for recording "any conveyance which affects the title to, or any interest in, any civil aircraft of the United States." 49 U.S.C. § 1403(a)(1) (1976). Section 503(c) provides that

No conveyance or instrument the recording of which is provided for by [§ 503(a)(1)] shall be valid in respect of such aircraft . . . against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Secretary of Transportation.

49 U.S.C. § 1403(c) (1976).

The purpose of section 503(c) is to create "a central clearing house for recordation of titles so that a person, wherever he may be,

---

1. It was not until September 4, 1980, that South Shore performed a floor plan check to ensure that H & H actually possessed the airplane. H & H did in fact possess the plane at

that time, having recently borrowed it from Tony Mat. H & H returned the plane to Tony Mat several days after South Shore's inspection.

will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft." *Hearings before the House Comm. on Interstate and Foreign Commerce,* 75th Cong., 3d Sess. 407 (testimony of F. Fagg, Director of Air Commerce, Dept. of Commerce), *quoted in Philko Aviation, Inc. v. Shacket,* —— U.S. ——, ——, 103 S.Ct. 2476, 2478, 76 L.Ed.2d 678 (1983). In keeping with that congressional purpose, the Supreme Court in *Philko Aviation* interpreted section 503(c) to mean that every aircraft transfer must be evidenced by an instrument and that every such instrument must be recorded with the FAA in order to have any affect as against the rights of innocent third parties. *Id.* The Court concluded that all state laws which permit undocumented or unrecorded transfers to affect the interests of third parties are preempted by the federal act.[2]

■ The Supreme Court also explained the meaning of section 506 upon which Tony Mat relies in this case. Section 506 provides in pertinent part:

> The validity of any instrument the recording of which is provided for by [section 503] shall be governed by the laws of the State . . . in which such instrument is delivered, irrespective of the location or the place of delivery of the property which is the subject of such instrument.

49 U.S.C. § 1406 (1976). The Court explained that once instruments are recorded pursuant to section 503, section 506 provides that state law rules determine the priorities among competing recorded interests. Section 506 furthermore federalizes choice-of-law rules concerning which state's substantive law applies. *Philko Aviation,* —— U.S. at ——, 103 S.Ct. at 2480 n. 7; *Sanders v. M.D. Aircraft Sales, Inc.,* 575 F.2d 1086, 1088 (3d Cir.1978). Section 506, however, in no way changes section 503's requirement that every instrument must be recorded before it obtains whatever priority applicable state law affords it. *Philko Aviation,* —— U.S. at ——, 103 S.Ct. at 2480 n. 7.

In *Philko Aviation* the Supreme Court applied its interpretations of sections 503(c) and 506 to facts which are very similar to the facts in this case. In *Philko Aviation* a seller sold an airplane to the Shackets who paid the full sale price upon delivery of the plane. As in this case, the seller assured the Shackets that he would take care of all the paperwork connected with the sale, including FAA recordation. Neither the seller nor the Shackets ever recorded the conveyance with the FAA. Thereafter the seller sold the same plane to another buyer, Philko Aviation. Philko's bank subsequently recorded the title documents with the FAA. The Supreme Court held that it was error to grant summary judgment in favor of the Shackets on the ground that a valid sale under state law was also valid against innocent third parties when that sale was not recorded with the FAA. *Id.* at —— U.S. at ——, 103 S.Ct. at 2480. The Supreme Court remanded the case, however, noting that certain factual matters had not been considered because of the district court's disposition of the case on an erroneous legal ground.

■ In this case the district court correctly interpreted section 503 as operating to invalidate any aircraft conveyance as against innocent third parties if that conveyance has not been recorded with the FAA. Therefore, the district court was correct in concluding that Tony Mat could not assert an unrecorded ownership interest in the airplane as against South Shore's recorded security interest.

■ We note that this case differs from *Philko Aviation* in one respect. Unlike the Shackets, Tony Mat did eventually record its ownership interest with the FAA, but only after the institution of this lawsuit. Tony Mat's belated compliance with section 503 does not alter the result reached by the district court in this case, however. According to section 506, we must apply the state law of the state where the challenged security instrument was delivered. The security agreement entered into between South Shore and H & H was delivered in Massachusetts, app. at 11a–12a, and thus

---

2. The Court noted, however, that such transfers were valid and binding as between the parties. *Philko Aviation,* —— U.S. at ——, 103 S.Ct. at 2480.

Massachusetts commercial law applies to determine the priorities between the two recorded interests. We, however, find no provision of Massachusetts commercial law that accords Tony Mat superiority.

Mass.Gen.Laws Ann. ch. 106, § 9–302(3)(a), (4) (West Supp. 1983–84) provides that an interest in property governed by a federal statute creating a national, federal recording system is perfected by the federal filing instead of by the state UCC filing. *See* Sigman, *The Wild Blue Yonder: Interests in Aircraft Under Our Federal System,* 46 S.Cal.L.Rev. 316, 337 (1973). Thus for the purpose of applying state priority rules, Tony Mat's interest in the airplane was perfected when filed with the FAA after the institution of this lawsuit, and South Shore's interest in the plane was perfected two years prior to that time. The Massachusetts Uniform Commercial Code provides that in cases not governed by other rules, priority between conflicting security interests in the same collateral shall be determined according to priority in time of perfection. Mass.Gen.Laws Ann. ch. 106, § 9–312(5)(a) (West Supp. 1983–84). Under that provision South Shore's interest is clearly superior.

### III.

Thus we hold that section 503(c) of the Act prevents Tony Mat from asserting an unrecorded ownership interest in the airplane to defeat the properly-recorded security interest of South Shore Bank. Furthermore, we conclude that Massachusetts commercial law does not protect Tony Mat because it perfected its interest in the airplane by filing with the FAA almost two years after South Shore had perfected its security interest in the same plane. Accordingly, we will affirm the district court's grant of summary judgment in favor of South Shore Bank.