**COMPASS INSURANCE COMPANY, Appellee,**

v.

**H.P. MOORE, and Moore Flying, Inc., Appellants.**

**No. 85–2355.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1986.

Decided Dec. 4, 1986.

Leo W. Nelsen, St. Louis, Mo., for appellants.

Jennifer P. Ewers, Chicago, Ill., for appellee.

Before ROSS, WOLLMAN, and MAGILL, Circuit Judges.

ROSS, Circuit Judge.

This appeal involves a priority dispute between appellee, Compass Insurance Company (Compass), who obtained a judgment lien on a Cessna aircraft, and appellants, H.P. Moore and Moore Flying, Inc. (Moore), who purchased the airplane. Moore bought the airplane before Compass obtained its judgment lien, but Compass registered its lien documents with the Federal Aviation Administration (FAA) before Moore recorded its purchase.

Compass's claim to the airplane arose as follows. In December 1981, Compass, a New York corporation, obtained a judgment in Dade County, Florida, against Hollywood Flying Service, Inc. (Hollywood) in the amount of $111,088.09. In March 1982, the Dade County, Florida Circuit Court granted Compass an "Order Declaring Judgment Lien" on the Cessna aircraft and another airplane. (A title search of the FAA register in February 1982 had revealed Hollywood as the record owner of the Cessna airplane.) The judgment lien represents Compass's only interest in the aircraft.[1] Then Compass filed its judgment lien with the FAA, and on June 8, 1982, the FAA recorded Compass's interest in the airplane on the FAA register.

Meanwhile in August 1979, title to the aircraft had been transferred in a sale by Hollywood to Sam Vires, d/b/a Mid-South Aircraft Sales (Mid-South), a Tennessee company. In November 1979, Vires sold the airplane to Mid-South. In May 1981, Mid-South sold the aircraft to appellant Moore Flying, Inc., a Missouri corporation.

---

1. The judgment was on a promissory note executed in June 1977 by Chester Zukowski on behalf of Hollywood Flying Service, Inc. to Miami National Bank. In October 1980, the Miami National Bank assigned the note to Compass. Compass then obtained a default judgment against Hollywood on the note in December 1981. The note itself bore no relation to the Cessna aircraft.

H.P. Moore took possession of the airplane and moved it to Missouri in May 1981.

The 1979 sales from Hollywood to Vires and Vires to Mid-South and the May 1981 sale from Mid-South to Moore were not registered with the FAA until June 30, 1983, approximately one year after Compass had recorded its judgment lien with the FAA. However, by the time Compass obtained its Florida judgment lien on the aircraft in March 1982, the airplane had been purchased by Moore and had been in the possession of Moore in Missouri for ten months.

The Federal Aviation Act established a federal recording system for conveyances of interests in aircraft. Section 503(c) of the Act, 49 U.S.C. § 1403(c) (1982) states that

> [n]o conveyance or instrument the recording of which is provided for by [the Act] shall be valid in respect of such aircraft * * * against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Secretary of Transportation * * *.

Section 503(d), 49 U.S.C. § 1403(d) (1982) states that a conveyance or instrument recorded under the Act "shall from the time of its filing for recordation be valid as to all persons without further or other recordation * * *."

As this court discussed in *Armstrong v. State Bank of Towner (In re Gelking)*, 754 F.2d 778, 780–81 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 3529, 87 L.Ed.2d 653 (1985), sections 503(c) and (d) of the Act

establish that perfection of an interest in aircraft occurs on the date the instruments creating the interest are filed for recordation. Moreover, "recordation is necessary * * * to reap the benefits of any priority [that] filing for recordation may have established." *Id., citing Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983).

 The Supreme Court's decision in *Philko Aviation, Inc. v. Shacket* established three principles. First, an interest in aircraft which is never recorded with the FAA will have no effect against the rights of any third parties who lack actual notice of the interest. Second, all state laws permitting undocumented or unrecorded transfers to affect the interests of third parties are preempted by the federal Act. Third, as between competing interests which are recorded with the FAA, state law determines priorities.

> [A]lthough recordation does not establish priority, "failure to record * * * serves to subordinate".
>
> * * * * * *
>
> [F]ailure [to record] invalidates the conveyance as to innocent third persons. But recordation itself merely validates; it does not grant priority.
>
> * * * * * *
>
> Although state law determines priorities, all interests must be federally recorded before they can obtain whatever priority to which they are entitled under state law.

*Id.* at 413, 103 S.Ct. at 2480. (citations omitted).

 The district court entered summary judgment in favor of Compass.[2] 621

---

**2.** The district court concluded that although Moore eventually recorded its interest, when Compass filed its judgment lien with the FAA, Hollywood was the owner of record. Thus, Moore's belated recordation could not serve to defeat Compass's prior perfection of its lien. Compass relies on *South Shore Bank v. Tony Mat, Inc.,* 712 F.2d 896 (3d Cir.1983) which reached a similar result although through slightly different reasoning. The *Tony Mat* court reasoned that *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678

(1983) indicates that the interest of a claimant who has never recorded with the FAA must be subordinate to that of a claimant who has recorded, regardless of the order in which the interests were created. However, when both have satisfied the recording requirement, their competing interests are to be resolved by resort to state law priority rules. The applicable state law provision, section 9–312(5)(a) of the Uniform Commercial Code, indicates that where other rules do not apply, the first to perfect an

F.Supp. 125. We reverse because the judgment lien obtained by Compass in March 1982 could not attach to property which at that time was no longer owned by or in the possession of the judgment debtor, Hollywood, and was no longer in the jurisdiction of the Florida Circuit Court. *See, e.g., Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.),* 56 B.R. 339 (Bankr.D.Minn.1985); *Curtis v. Carey,* 393 S.W.2d 185 (Tex.Civ. App.1965); *Marshall v. Bardin,* 169 Kan. 534, 220 P.2d 187 (Kan.1950), all involving priority disputes with respect to aircraft between attachment or judgment creditors and antecedent purchasers and all according priority to the antecedent buyers.

The foregoing decisions in favor of antecedent purchasers are based on the premise that a judgment creditor's lien on personal property is merely derivative of the judgment debtor's rights and interest in such property. When property of the debtor has been sold prior to entry of a judgment against the debtor, and particularly if the property has been removed from the jurisdiction, a judgment lien cannot attach to it. *See In re Bellanca Aircraft Corp., supra,* 56 B.R. at 378 ("Where personal property has been conveyed by the judgment debtor to a third party, therefore, no lienable interest in such property remains with the judgment debtor, and the judgment creditor must look elsewhere to satisfy his claim.") *Accord Marshall v. Bardin, supra,* 220 P.2d at 190 ("[A]n attaching creditor acquires no greater right in the property seized than the defendant debtor in the attachment owned.") (Citations omitted.) *Cf. In re Gelking, supra,* 754 F.2d at 781 (concerning consensual security interests, "[a]ttachment, of course, is a necessary step in the perfection of a security interest * * *. (U.C.C. §§ 9–203(1), 303(1)). Further, in order for a security interest to attach, the debtor must have 'rights in the collateral.' * * * (U.C.C. § 9–203(1)(c))".)

As a judgment creditor can acquire no rights superior to those of its judgment debtor, Compass's judgment lien could not attach to the Cessna aircraft which had been sold by the judgment debtor in August 1979, resold twice, and then removed from Florida by Moore ten months before Compass sought its declaration of judgment lien in the Dade County, Florida Circuit Court. This result does not defeat the purpose of section 503(c) of the Federal Aviation Act as a judgment creditor is not the kind of innocent third party who engages in transactions in reliance on the FAA register intended to be protected by the Act. *See In re Bellanca Aircraft Corp., supra,* 56 B.R. at 379 ("While it is clear that purchasers of or persons taking security interests in aircraft must and do significantly rely on the FAA register * * the same cannot be said of general creditors * * *. Instead such creditors bargain on the basis that, in the absence of collection, a debt may be later reduced to judgment and thereby be enforced against the then existing property interests of the judgment debtor * * *. [They do] not deal on the faith of the FAA register to the extent that [they] should benefit from its protections.") *Accord Curtis v. Carey, supra,* 393 S.W.2d at 189; *Marshall v. Bardin, supra,* 220 P.2d at 190–91. Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

interest obtains priority. *South Shore Bank v. Tony Mat, Inc., supra,* 712 F.2d at 898–99.

*Tony Mat* thus subordinated an antecedent buyer who filed after recordation by a subsequent lender who had extended a loan on the faith of the FAA register. A major difference between the present case and *Tony Mat* is that as a judgment creditor, Compass never extended credit in reliance on the FAA register but just sought to attach whatever its judgment debtor, Hollywood, owned in Florida in March 1982. Hollywood did not own the aircraft at that time.