**In re AIR OPERATIONS, INTERNA-
TIONAL, INC., Debtor.**

**Alberto GACHARNA, Alberto Gacharna
d/b/a Brackett Aircraft
Radio, Plaintiff,**

**v.**

**AIR OPERATIONS INTERNATIONAL,
INC., Defendant.**

**Bankruptcy No. C–B–88–0835.
Adv. No. 88–1989.**

United States Bankruptcy Court,
W.D. North Carolina,
Charlotte Division.

March 28, 1989.

Walter Tribbey, Guasti, Cal., Charles R. Buckley, III, Charlotte, N.C., for plaintiff.

Herbert S. Waldman, Atlanta, Ga. and Paul B. Guthrey, Jr., Charlotte, N.C., for third-party claimants.

James L. Fretwell, Charlotte, N.C., for trustee.

## ORDER DISSOLVING THE PLAINTIFF'S PRE–JUDGMENT ATTACHMENT LIEN

MARVIN R. WOOTEN, Bankruptcy Judge.

This matter is before the court for a hearing on the motions of Aero Occidente, Ltda. and Aero Mercantil, S.A., as third-party claimants, to dissolve the plaintiff's, Mr. Alberto Gacharna, pre-judgment attachment lien on two (2) aircraft which were registered with the Federal Aviation Administration in the name of the defendant, Air Operations International. The matter is also before the court for a trial on the plaintiff's claims against the defendant for breach of contract, conversion and punitive damages. Also, the trustee for the debtor orally alleges, if it is determined that the third-party claimants were not the equitable owners or that the plaintiff's lien should not be dissolved, that the aircraft are property of the estate and that the plaintiff received a preference under 11 U.S.C. § 547. The court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

In June 1987, the plaintiff, Al Gacharna, purchased a Lake Model # 250 amphibian aircraft through a broker, Mr. Robert Tucker, for $169,510.00. Mr. Gacharna, then sold the plane to Aero Electronic, Ltd. ("Aero") and was to deliver the plane to Aero sometime in early 1988. The plane was hangered in Grand Rapids, Michigan under the control of Mr. Robert Tucker pending delivery. In January 1988, the plaintiff met with Mr. Donald Allen, a/k/a Donald Henke, president of the debtor corporation, and the parties orally agreed that Mr. Allen would ferry the Lake aircraft from Michigan to either California or Colombia, depending on Aero's preference, for a fixed price. Mr. Gacharna subsequently asked Mr. Allen to move the plane within two weeks, but Mr. Allen said that he could not move the plane until spring because of bad weather and scheduling problems.

In the meantime, Mr. Gacharna advised Mr. Tucker that Mr. Allen would be picking up the Lake aircraft. On February 16, 1988, Mr. Allen did in fact take possession of the airplane, but the plaintiff did not learn this until he spoke with Mr. Tucker sometime in late March.

Mr. Gacharna never received the Lake Model # 250 aircraft and the whereabouts of that aircraft are still unknown. In late March, Mr. Allen spoke with the plaintiff's lawyer and offered to give Mr. Gacharna another plane and $46,000 in exchange for a release of liability for the loss of the Lake aircraft. The documents were drawn up for this settlement but were never signed by either party. In April 1988, Mr. Gacharna filed an action against Air Operations International ("AOI")—the debtor and Mr. Allen's corporation—in the District Court for the Central District of California for damages for breach of contract, conversion and punitive damages relating to the Lake Model # 250 aircraft. The plaintiff presented evidence showing that, at present, he would have to spend approximately $200,000 to replace the Lake Model # 250 aircraft.

Because the California District Court found AOI to be a foreign corporation, it issued an ex parte order for a pre-judgment writ of attachment upon specific property listed on an exhibit presented to that court by Mr. Gacharna's attorney. The exhibit was a list secured by Mr. Gacharna from a title search company showing all aircraft registered with the Federal Aviation Administration ("FAA") in the name of Donald Allen, Donald Henke or AOI. However, the levies authorized by the district court order were never made in California.

Presumably, Mr. Gacharna and his attorney discovered that some property titled in the debtor's name was located in Florida. Thus, Mr. Gacharna and his attorney filed the above-referenced papers (the order and exhibit) with the United States District

Court in the Middle District of Florida. The Florida court then issued a "writ of execution," which was most likely meant to be a pre-judgment writ of attachment, on property of the debtor which was located in that district. Mr. Caddell, a United States Marshal, testified that he and his deputies levied on two (2) airplanes located in Lakeland, Florida which were registered to AOI. These planes, a Piper Aerostar, Registration Number N707JP ("Aerostar") and a Cessna TV206G, Registration Number N37DE ("Cessna 206"), form the basis of the third-party claims filed in this case.

After the aircraft were seized in Florida by the Florida marshal, a third-party claim was filed in the California district court on behalf of Aero Occidente, Ltda. ("Occidente") for the release of the Cessna 206 from the levy of attachment, and a similar claim was filed for the release of the Aerostar on behalf of Aero Mercantil, S.A. ("Mercantil"), both claimants being corporations originally formed and presently existing pursuant to the laws of the Republic of Colombia.

Before the California court ruled on the third-party claims, AOI filed its petition for relief under Chapter 7 of the Bankruptcy Code in the Western District of North Carolina, thereby staying the action in California. In an order entered August 26, 1988, the California court specifically declined to rule on the third-party claims of Mercantil and Occidente, deferring any decision on that matter to this court. Thereafter, by agreement of all parties, the entire action, including the plaintiff's claim for breach of contract and conversion, was transferred to this court.

The third-party claimants in this action assert that they are the actual owners of the planes, and the aircraft were titled in AOI's name for ferry purposes and because federal law prohibited them as foreign citizens from registering the aircraft in their names in the United States. The court heard evidence presented by Mercantil in support of its position that it purchased the plane and is the equitable owner of the Aerostar. However, Mr. Durango, who was to testify on behalf of Occidente, was not present and thus there was no evidence showing Occidente provided the funds for the purchase of the Cessna 206.

Mr. James S. Leaver, the sales manager for Mercantil responsible for all aircraft purchased and sold by the corporation, testified that in November 1987, he sent $60,000 to Globe Aero Ltd., Inc. ("Globe"), a purchasing agent, as a down payment for the used Piper Aerostar, Registration Number N707JP. The rest of the purchase price, $205,000, was transferred to Globe in January 1988. Although the funds may have actually been sent by other companies such as Aerodyne and Golden Union, the evidence shows that these companies and Mercantil were all owned by the same parties. Thus, Globe purchased the Aerostar for Mercantil with funds supplied to it by Mercantil. Mercantil then contracted with AOI to deliver the plane to Colombia. Prior to its export to Colombia, the Aerostar was delivered to Globe in order to have it inspected and to obtain an export certificate of airworthiness.

The deposition of Mr. Philip Waldman, president of Globe, was admitted into evidence at trial. Mr. Waldman stated that since 1985, Globe had purchased twenty (20) airplanes for Mercantil, all of which were delivered by AOI to Globe. The last plane purchased for Mercantil was a Piper Aerostar and Mercantil paid a total of $265,000 for the plane. The Aerostar was initially registered in Globe's name for insurance purposes during inspection and testing. After completion of the flight tests of the Aerostar, Globe transferred registration of the plane to AOI for purposes of delivery. The Aerostar was hangered at Globe's facilities in Lakeland, Florida when it was seized by the United States Marshal.

Mr. Gray, a FAA safety inspector in Charlotte, and other witnesses testified that under 49 U.S.C.App. § 1401(b), a nonresident alien cannot register an aircraft on the United States FAA registry. Only an aircraft owned by a citizen of the United States or by an alien who permanently resides in the United States or by a foreign corporation which bases and uses it in the

United States may bear a United States registration. 49 U.S.C.App. § 1401(b). If an aircraft does not have a registration number, it is illegal to operate that plane. *See* 49 U.S.C.App. § 1401(a) and § 1508 (no civil aircraft may be operated or navigated in airspace of the United States unless it bears a United States registration or unless it bears registration of a foreign nation). Mr. Damanino, an employee of Thurston Aviation, who buys and sells planes, testified that it is a common practice in the industry to register a plane in the name of a ferry company when the owner is a foreign citizen. Mr. Damanino conceded that it is possible to obtain a special flight authorization or "ferry permit" without registering the aircraft in the ferry company's name and that there is no legal requirement to register a plane in the ferry company's name. However, Mr. Gacharna, the plaintiff, even testified that, although he did not approve of the practice, he had in the past, registered an aircraft in AOI's name when requested to do so by one of his Colombian customers.

## DISCUSSION AND
## CONCLUSIONS OF LAW

The issues presented to the court in this action are:

A. DO THE THIRD–PARTY CLAIMANTS HAVE STANDING TO QUESTION THE VALIDITY OF THE ATTACHMENT PROCEDURE; AND IF SO, IS THE ATTACHMENT VALID?

B. DID THE THIRD–PARTY CLAIMANTS ACTUALLY PURCHASE THE AIRCRAFT, MAKING THEM THE EQUITABLE OWNERS OF THE PLANES; AND IF SO, SHOULD THE PLAINTIFF'S PRE–JUDGMENT ATTACHMENT LIEN BE DISSOLVED WHEN THE AIRCRAFT WERE REGISTERED IN THE DEBTOR'S NAME AND FEDERAL AND STATE LAW REQUIRE RECORDATION WITH THE FAA?

C. DID THE DEBTOR BREACH ITS CONTRACT WITH THE PLAINTIFF OR CONVERT THE PLAINTIFF'S AIRCRAFT TO ITS OWN USE; AND IF SO,

IS THE PLAINTIFF ENTITLED TO PUNITIVE DAMAGES?

A. DO THE THIRD–PARTY CLAIMANTS HAVE STANDING TO QUESTION THE VALIDITY OF THE ATTACHMENT PROCEDURE; AND IF SO, IS THE ATTACHMENT VALID?

The third-party claimants in this matter have attacked the validity of the writ of "execution" issued by the United States District Court for the Middle District of Florida. The first issue the court must decide is whether the third-party claimants are entitled to question any irregularities in the attachment proceeding.

First, the court finds that the writ of execution was most likely meant to be a writ of attachment; and thus, the attachment order was proper in that respect. The attachment of the aircraft that are the subject of this action occurred in Florida and the aircraft were at all times located in Florida. Thus, Florida law governs the question of standing to contest the validity of an attachment proceeding.

> Ordinarily a third person claiming ownership of, or an interest in, the attached property will be accorded the right to come into the attachment proceeding for the protection of such ownership or interest, but according to some authorities, his right to do so must be expressly conferred by statute.

7 C.J.S. *Attachment* § 287 (1980). Fla. Stat. § 76.21 governs the claims of third parties to attached property. It states that "if any attachment is levied on property claimed by any person other than defendant, such person may replevy it or interpose a claim in the manner provided in case of execution." *Id.*

However, most jurisdictions adhere to the rule that "[a]n intervener cannot question the regularity of the proceedings in the principal case." 7 C.J.S. *Attachment* § 287. Florida is no exception. The Supreme Court of Florida has held that one who interposes a claim to property levied upon by virtue of a writ of attachment cannot be permitted to prove at the trial that no valid levy had been made. *H.B.*

*Claflin Co. v. Harrison*, 44 Fla. 218, 31 So. 818 (1902). The court reasoned that

> the claim proceeding must necessarily be based upon a levy on personal property, and by instituting such a proceeding the claimant conclusively admits the regularity and validity of the levy upon or seizure of the property under process. If the property has not, in fact, been levied upon, a claim proceeding will not lie.

Other courts have allowed third parties to intervene, but only for the purpose of asserting their superior title to the property in question. Third parties are not allowed to defend or question the proceedings in the main action. *See Blair v. Puryear*, 87 N.C. 101 (1882).

■ The court therefore finds that the third-party claimants in this action may only assert their superior title and may not question the validity of the Florida attachment proceeding.

B. DID THE THIRD–PARTY CLAIMANTS ACTUALLY PURCHASE THE AIRCRAFT, MAKING THEM THE EQUITABLE OWNERS OF THE PLANES; AND IF SO, SHOULD THE PLAINTIFF'S PRE–JUDGMENT ATTACHMENT LIEN BE DISSOLVED WHEN THE AIRCRAFT WERE REGISTERED IN THE DEBTOR'S NAME AND FEDERAL AND STATE LAW REQUIRE RECORDATION WITH THE FAA?

The evidence presented by Mercantil in this case clearly shows that it purchased the Aerostar. Mr. James Leaver, a sales manager for Mercantil, testified that he sent $60,000 to Globe in November 1987, as a deposit and the remaining $205,000 was transferred in January 1988, for the purchase of the Aerostar. Mr. Philip Waldman of Globe corroborated Mr. Leaver's testimony and in his affidavit stated that Globe had purchased planes for Mercantil in the past and that the plane was hangered at Globe's facilities for testing and inspection purposes. The evidence also showed that the Aerostar was registered in the debtor's name not because the debtor was the owner of the plane, but for ferry purposes only. Mercantil was prohibited from registering the aircraft in its name

under 49 U.S.C.App. § 1401(b), but the Aerostar had to be registered in someone's name in order to test and move it under 49 U.S.C.App. § 1401(a) and § 1508. Thus, for convenience, the plane was registered in Donald Allen and AOI's name. The plaintiff, who sold airplanes to foreigners, had, in the past, registered an aircraft in AOI's name at the request of his customer. Taking all the above factors into consideration, the court finds that Mercantil is the equitable owner of the Aerostar.

The third-party claimant, Occidente, did not present any evidence showing ownership of the Cessna aircraft it has claimed in this action.

Once the court concludes that Mercantil did, in fact, purchase the Aerostar through Globe, the question becomes who is entitled to the aircraft as between the equitable owner and a creditor who has obtained a pre-judgment attachment on an aircraft registered with the FAA in the name of its debtor. 49 U.S.C.App. § 1403(c) states that

> no conveyance or instrument ... shall be valid in respect of such aircraft ... against any person other than the person by whom the conveyance is made ... or any person having actual notice thereof, until such conveyance ... is filed for recording in the office of the Secretary of Transportation.

49 U.S.C.App. § 1403(c). The Supreme Court's decision in *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983) established three principles in connection with 49 U.S.C.App. § 1403(c).

> First, an interest in aircraft which is never recorded with the FAA will have no effect against the rights of any third parties who lack actual notice of the interest. Second, all state laws permitting undocumented or unrecorded transfers to affect the interests of third parties are preempted by the federal [statute]. Third, as between competing interests which are recorded with the FAA, state law determines priorities.

*Compass Insurance Co. v. H.P. Moore*, 806 F.2d 796, 798 (8th Cir.1986) *citing Phil-*

*ko Aviation, Inc. v. Shacket,* 462 U.S. 406, 413, 103 S.Ct. 2476, 2480, 76 L.Ed.2d 678 (1983).

In *Southshore Bank v. Tony Mat, Inc.,* 712 F.2d 896 (3d Cir.1983), the court interpreted *Philko* and found that the interest of a claimant who has never recorded with the FAA must be subordinate to that of a claimant who has recorded, regardless of the order in which the interests were created. But, when both parties have satisfied the recording requirement, their competing interests are to be resolved by resort to state law priority rules. *Tony Mat,* 712 F.2d at 898–99. The plaintiff in this case cites *Tony Mat* and *Philko* and argues that he is entitled to the plane because Mercantil had not recorded its interests in the aircraft with the FAA at the time Gacharna used the FAA register to attach whatever property its judgment debtor owned. However, as the court in *Compass Ins. v. Moore* explained in a footnote, the situation involving an attachment creditor who uses the FAA register to find property of its debtor is very different from the situation in *Tony Mat,* where a lender extended credit in reliance on the FAA register. *Compass,* 806 F.2d at 798–799.

The circumstances here are also distinguishable from the facts involved in the *Philko* case. In *Philko,* a corporation in Illinois, operated by Roger Smith, sold an airplane to the respondents, who took possession but who did not receive the title documents or record the transfer, because Smith told them he would "take care of the paperwork." Subsequently, Smith purported to sell the plane to the petitioner, giving it the title documents, which petitioner's financing bank later recorded with the FAA. The court held in favor of the petitioners. *Philko,* 462 U.S. at 406, 103 S.Ct. at 678. *Philko* and *Tony Mat* both involved a good faith purchaser or a creditor who purchased an aircraft on loaned money in reliance on the FAA registry; while the plaintiff, as an attaching creditor, used the FAA registry merely to find the debtor's property. Thus, the court finds that the plaintiff's reliance on these two cases to show that he is entitled to the Aerostar is misplaced. The *Compass* case involved a dispute between a judgment creditor and an equitable owner and thus is more on point.

In *Compass,* a judgment creditor of Hollywood Flying Service, Inc., obtained a lien on a Cessna aircraft in March 1982, and on June 8, 1982, the FAA recorded Compass' interest in the airplane on the FAA register. (A title search of the FAA register in February 1982, revealed Hollywood as the record owner of the Cessna.) Meanwhile, in August 1979, title to the aircraft had been transferred in a sale by Hollywood to MidSouth. In May 1981, MidSouth sold the aircraft to the appellant, Moore Flying, Inc., the party who has possession of the airplane. Neither of these transactions were registered with the FAA until June 30, 1983, approximately one (1) year after Compass had recorded its judgment lien. *Compass,* 806 F.2d at 797–798.

The Compass court reviewed 49 U.S.C. App. § 1403(c), *Philko* and *Tony Mat* but held in favor of Moore for two (2) reasons. First, the court held that the "judgment lien obtained by Compass in March 1982, could not attach to property which at the time was no longer owned by or in possession of the judgment debtor, Hollywood ...." *Compass,* 806 F.2d at 799. The court cited several cases which are based on the premise that a judgment creditor's lien on personal property is derivative of the judgment debtor's rights and interest in such property. *See In re Bellanca Aircraft Corp.,* 56 B.R. 339, 398 (Bankr.D. Minn.1985) and *Marshall v. Bardin,* 169 Kan. 534, 220 P.2d 187, 190 (1950). Secondly, the court found that this result "does not defeat the purpose of [49 U.S.C. § 1430(c) ] as a judgment creditor is not the kind of innocent third party who engages in transactions in reliance on the FAA register intended to be protected by [the statute]". *Compass,* 806 F.2d at 799 and *see In re Bellanca Aircraft Corp.,* 56 B.R. at 379 and *Curtis v. Carey,* 393 S.W.2d 185 (Tex.Civ.App.1965).

*Mobsby v. Hong Kong & Shanghai Banking Corp.,* 47 So.2d 291 (Fla.1950), also supports the position that when an aircraft is titled in the name of a party who

did not purchase the plane, for the purpose of ferrying the plane, that party or that party's creditor has no claim to the aircraft. In *Mobsby*, the bank gave Aircraft Sales Corp. money with which to purchase a Beechcraft airplane, but when its draft was dishonored, the bank attached the aircraft. *Mobsby*, 47 So.2d at 291. While the evidence conclusively showed that Aircraft Sales purchased the plane, Aircraft executed a bill of sale to Mosby. However, Mosby did not pay anything for the plane. The sale was made for purposes of ferry flight only and to satisfy federal law. *Mobsby*, 47 So.2d at 292. The court found that there was no basis for Mosby's claim and thus, the attachment by the bank on the equitable owner's aircraft was valid.

■ The court concludes that the facts of *Mobsby* and *Compass* more closely parallel the facts of this case than those in *Tony Mat* or *Shacket*.[1] Thus, the court concludes that the plaintiff's attachment on the Aerostar should be dissolved for three reasons. First, the court finds that the plaintiff purchased the plane and that it was registered in the debtor's name for ferry purposes and to satisfy federal law. Secondly, the plaintiff is not entitled to the aircraft because at the time of the attachment the debtor had no claim to the Aerostar, and the plaintiff does not have any greater rights to the aircraft than its debtor. Finally, the plaintiff is not entitled to the protection of the FAA recording statute because he was not an innocent party who engaged in a transaction in reliance on the FAA registry; the plaintiff merely used the registry to find something to attach.

## C. DID THE DEBTOR BREACH ITS CONTRACT WITH THE PLAINTIFF OR CONVERT THE PLAINTIFF'S AIRCRAFT TO ITS OWN USE; AND IF SO, IS THE PLAINTIFF ENTITLED TO PUNITIVE DAMAGES?

■ The court finds that Mr. Gacharna hired and made an oral contract with the defendant/debtor to ferry a Lake Model # 250 amphibian aircraft from Grand Rapids, Michigan to a point designated by Mr. Gacharna's customer. Mr. Donald Allen a/k/a Donald Henke, the president of the debtor corporation, did in fact pick up the aircraft on February 16, 1988, with the permission of Mr. Robert Tucker, Mr. Gacharna's purchasing agent.

The court further finds that the defendant never delivered the aircraft as requested. The location of that aircraft is still unknown and the plaintiff testified that it would cost $200,000 to replace the Lake Model # 250 aircraft. The defendant and Mr. Allen have not offered any evidence to the contrary and in fact, the debtor and Mr. Allen were not present or represented at the hearing to contest the plaintiff's position.

Thus, the court finds that the defendant did convert the plane and breach its oral contract with the plaintiff. The plaintiff is entitled to recover on its contract and for the price of a Lake Model # 250 amphibian aircraft which is approximately $200,0000. However, there was no showing by the plaintiff that would entitle him to punitive damages and, thus, they are denied.

## CONCLUSIONS

The court finds that the third-party claimants properly intervened in this pro-

---

**1.** The plaintiff also cites Fla.Stat.Ann. § 329.01, the Florida statute which has the same language as 49 U.S.C.App. § 1403(c), but which also contains a forfeiture provision that makes it unlawful to possess an aircraft not registered in accordance with the FAA requirements. Gacharna relies on two cases which interpret this forfeiture statute and hold that even though the plaintiff was, in fact, the purchaser of the aircraft, the plaintiff is not entitled to the aircraft when his bill of sale was not recorded with the FAA. *See In re Forfeiture of one 1946 Lockheed L–18 Loadstar*, 493 So.2d 10 (Fla.App.1986) and *Lamar v. Wheels Unlimited, Inc.*, 513 So.2d 135 (Fla.1987). However, in both cases the aircraft (or motor vehicle) were used as instrumentality in violation of contraband laws and the forfeiture statute allowed the government to seize the plane or car regardless of whether the party involved in the illegal activity (and in whose name the vehicle was registered) actually purchased the plane. The forfeiture statute is not involved in this case and thus the court concludes that the two Florida cases are inapplicable.

ceeding in order to assert their superior title. However, they are not entitled to question the validity of the attachment proceeding; and thus, the court does not reach that issue. Mercantil presented evidence that showed it was the equitable owner of the Piper Aerostar. Because the plane was titled in the defendant's name for ferry purposes only and to satisfy federal law; and because the plaintiff did not rely on the FAA register as the plaintiffs in *Tony Mat* and *Philko* did, the court finds that Mercantil is the owner of the Aerostar and the plaintiff's lien should be dissolved.

It appears to the court that Occidente may have cause in the nature of excusable neglect for failure to appear and present evidence of ownership of the Cessna. Thus, the court concludes that the claim of Occidente should be dismissed unless Occidente appears on a day certain to show cause of excusable neglect.

The court further concludes that the trustee has no right, title or interest in or claim to the Aerostar plane because Mercantil has full ownership of the plane and the trustee, whose rights are derivitive of the debtor's, has nothing more than bare legal title to the aircraft.

However, the trustee's rights, title or interest in, if any, as a bare legal title holder of the Cessna aircraft will have to be determined on the basis of and after a final determination of Occidente's claim of equitable ownership in the Cessna. Furthermore, if it is ultimately determined that Occidente had no equitable ownership in the Cessna, this court will then hold a hearing on the validity of the attachment procedure as against the trustee and on the question of whether the attachment by the plaintiff was a preference under 11 U.S.C. § 547.

Further, the court finds that the defendant breached its contract to ferry the Lake Model #250 for the plaintiff and converted the Lake to its own use. There was no showing that the plaintiff is entitled to punitive damages.

It is therefore FINALLY CONCLUDED:

1. That the plaintiff's lien on the Aerostar plane should be dissolved in favor of Mercantil.

2. That the claim of Occidente should be DISMISSED unless Occidente appears on April 28, 1989, at 9:30 a.m. in Room 115, 401 West Trade Street, Charlotte, NC, to show cause why default judgment should not be entered against it.

3. That the trustee has no right, title or interest in the Aerostar. That the determination of whether the trustee has any interest other than bare legal title in the Cessna will be made on the basis of and after a final determination of Occidente's equitable ownership claim. That if it is determined that Occidente had no equitable ownership in the Cessna, this court will then determine the validity of the attachment procedure as against the trustee and decide whether the plaintiff received a preference under 11 U.S.C. § 547.

4. That the plaintiff is entitled to damages from the defendant, AOI, in the amount of $205,000 for conversion of the Lake Model #250 aircraft.

5. That an appropriate judgment shall be entered in accordance with the findings and conclusions stated herein.