**In re TOWER AIR, INC., a Delaware Corporation, Debtor.**

**Charles A. Stanziale, Jr., as Chapter 7 Trustee for the Bankruptcy Estate of Tower Air, Inc., Plaintiff,**

v.

**Pratt & Whitney (a United Technologies Corp.), Defendant.**

**Bankruptcy No. 00–01280 JBR. Adversary No. A–01–00088 PBL.**

United States Bankruptcy Court, D. Delaware.

Nov. 9, 2004.

Richard W. Riley, Duane Morris LLP, Wilmington, DE, Diane E. Vuocolo, Kevin P. Ray, Duane Morris LLP, Philadelphia, PA, Donald J. Crecca, Schwartz, Tobia, Stanziale, Sedita & Campisano, P.A., Montclair, NJ, for Charles A. Stanziale, Jr. Chapter 7 Trustee for Tower Air, Inc.

Henry E. Gallagher, Jr., Marc J. Phillips, Connolly Bove Lodge & Hutz LLP, Wilmington, DE, John B. Nolan, James J. Tancredi, David M. Bizar, Day, Berry & Howard LLP, Hartford, CT, for Defendant.

## MEMORANDUM OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT [1]

PAUL B. LINDSEY, Bankruptcy Judge.

### I. BACKGROUND

Tower Air, Inc. ("Debtor"), on February 29, 2000, filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[2] In May 2000, Plaintiff Charles A. Stanziale, Jr. ("Plaintiff"), was appointed Trustee of Debtor's bankruptcy estate and in December 2000, the case was converted to Chapter 7 of the Bankruptcy Code. Plaintiff then became Trustee of the Chapter 7 Bankruptcy Estate. On February 9, 2001, Plaintiff filed this adversary complaint seeking to avoid and recover pursuant to §§ 547 and 550 an allegedly preferential transfer[3] of $300,000 by

---

1. This opinion will constitute the findings of fact and conclusions of law of the Court required by Federal Rule of Bankruptcy Procedure 7052.

2. 11 U.S.C. §§ 101 et seq. Hereinafter, references to statutory provisions by section number alone will be to provisions of the Bankruptcy Code unless otherwise noted.

3. Under § 547(b), the trustee may seek to avoid, as a preference, "... any transfer of an interest of the debtor in property—

Debtor to Defendant, Pratt and Whitney ("Defendant"). Defendant thereafter filed its Answer to the Complaint and after unsuccessful Court-ordered mediation, Defendant filed its Motion for Summary Judgment. Plaintiff filed its Objection to Defendant's Motion for Summary Judgment, together with its Cross-motion for Summary Judgment. Defendant filed its Reply Memorandum in Support of its Motion and in Opposition to Plaintiff's Cross-motion. A Notice of Completion of Briefing was filed and, at the request of Defendant, the Court heard oral argument on the motions.

The parties agree that the facts underlying the Complaint are undisputed, and the case has been submitted for decision on the competing Motions for Summary Judgment. The motions are therefore ripe for consideration and decision at this time.

## II. *JURISDICTION*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (F), (K) and (O).

## III. *STANDARD OF REVIEW*

Federal Rule of Civil Procedure 56(c), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that a court shall

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>  (A) on or within 90 days before the date of the filing of the petition; or
>  (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—

grant a motion for summary judgment when the record evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). The parties are in agreement that there are no material facts in dispute and therefore, summary judgment is appropriate in this adversary proceeding.

## IV. *FACTS AND CONTENTIONS*

Under a written agreement dated August 31, 1999, Defendant agreed to perform certain specified maintenance services on a certain aircraft engine belonging to Debtor for a fixed price of $3,350,000. (Memorandum in Support of Pratt and Whitney's Motion for Summary Judgment, at 1) On December 17, 1999, during the 90-day period prior to the filing of Debtor's bankruptcy petition, Debtor made a partial payment on the obligation to Defendant in the amount of $300,000. (P. & W. Memo, at 1) Defendant maintained possession of the engine from the time of delivery to it at least until the February 29, 2000 petition date and thereafter.[4]

In order to avoid and recover the $300,000 transfer made by Debtor, Plaintiff must first establish that it meets each of the requirements of § 547(b).[5] Howev-

> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

Under § 550(a), the value of a transfer avoided under, *inter alia,* § 547 may be recovered for the benefit of the estate.

4. The record does not reflect when, or whether, Defendant subsequently surrendered possession of the engine.

5. See note 3, *supra.*

er, for purposes of the Motions before the Court at this time, only § 547(b)(5) is at issue and must be addressed.

■ Defendant contends that it did not receive more than it would have received in a Chapter 7 liquidation, since it was fully secured by a common law nonconsensual, possessory artisan's lien recognized by Connecticut law. (P. & W. Memo, at 2) Alternatively, Plaintiff contends that in order for any such lien to be perfected, notice was required to be filed with the Federal Aviation Administration ("FAA"), and/or with the Connecticut Secretary of State under Connecticut's aircraft lien statute. (Brief in Opposition to Motion of Defendant Pratt and Whitney and in Support of Chapter 7 Trustee's Cross–Motion for Summary Judgment, at 1) Since it is conceded that Defendant made neither such filing, Plaintiff contends that Defendant's lien, if there is one, is not perfected or enforceable and therefore may be avoided under §§ 544 and 545, the "strong-arm" provisions of the Bankruptcy Code.[6] (Trustee's Brief, at 1–2, 15)

## V.  CONNECTICUT LAW PROVISIONS

The Connecticut statutory provision relied upon by Plaintiff is C.G.S.A. § 49–92g, which is in its entirety as follows:

### § 49–92g.  Aircraft liens

Any person who stores, cares for, maintains, repairs, or furnishes any services, gasoline, accessories, materials or other supplies at the request of or with the consent of the owner, his agent or legal possessor of an aircraft, as defined in section 15–34, has a lien upon and may retain possession of the aircraft until the sum due for any fees, expenses or charges for such storage, care, maintenance, repair or the furnishing of gasoline, accessories, materials or other supplies [has been paid]. The lienor shall be entitled to retain possession of the aircraft until the amount of fees, expenses or charges for such storage, care, maintenance, repair or the furnishing of gasoline, accessories, materials or other supplies [has been paid]. The lien shall be superior to all other liens, except liens for taxes. Any person entitled to a lien pursuant to this section shall within ninety days after the date upon which work or services were performed or when such fees or charges were incurred file a verified statement in the Office of the Secretary of the State, pursuant to the provisions of sections 49–92h and 49–92i.

■ Plaintiff's contention under the Connecticut aircraft lien statute may be disposed of quickly. The language of C.G.S.A. § 49–92g applies to, and was intended to create and provide for liens on "aircraft." The term "aircraft" is defined in C.G.S.A. § 15–34(5), as follows

(5) "Aircraft" means any contrivance used or designed for navigation of or flight in air, including (a) airplanes, meaning power-driven fixed-wing aircraft, heavier than air, supported by the dynamic reaction of the air against their wings; (b) gliders, meaning heavier than air aircraft, the free flight of which does not depend principally upon a power-generating unit, and (c) rotorcraft, meaning power-driven aircraft, heavier

---

**6.** Section 544 gives the trustee, or the debtor in possession, the rights and powers of a hypothetical judicial lien creditor of a hypothetical *bona fide* purchaser of real property at the time of the commencement of the case, whether or not there actually is such a creditor or purchaser.  Section 545 permits the trustee or the debtor in possession, to avoid the fixing of a statutory lien on property of the debtor to the extent that the lien, *inter alia,* is not perfected or enforceable against a *bona fide* purchaser of that property at the time of the commencement of the case, again whether or not there actually is such a purchaser.

than air, supported during flight by one or more rotors.

Clearly, the term "aircraft," under C.G.S.A. § 15–34(5), was not intended to include engines, or other components or parts of aircraft separate from the aircraft itself and no reasonable reading of the statute could support any other construction. Thus, the provisions of C.G.S.A. § 49–92g cover only the aircraft themselves and not engines or other components separately, and therefore Defendant was not required under Connecticut law to file a verified statement in the Office of the Secretary of the State of Connecticut in order to perfect its lien on the engine in question. Plaintiff's contention to the contrary is without merit. C.G.S.A. § 49–92g simply does not apply to the situation presented in this case.

■ In support of its claim of a valid possessory, non-consensual lien under Connecticut common law, Defendant cites *United States v. United Aircraft Corporation*, 80 F.Supp. 52 (D.Conn.1948). That case involved a replevin action by the United States, as holder of a duly filed and recorded purchase-money chattel mortgage on an aircraft, the engines from which had been removed and shipped to an artificer for overhaul, who had retained possession of the engines in pursuance of a claim of an artificer's lien for payment for its services. The existence and validity of such a lien under Connecticut law seems to be assumed by the *United Aircraft* Court, as that issue does not appear to have been raised in the case. The Court discusses and concedes the validity of the federal preemption of the field of conveyancing of interests in aircraft and portions thereof, but the case turns upon the adequacy of the description of the engines in question to provide notice to the artificer of the existence of the lien of the chattel mort-

gage. *Id.* at 54. The description in the mortgage is limited to the definition of the aircraft as including "all parts, engines, equipment and accessories." This description is found to be "totally lacking in particularity sufficient to warn such artificers of the inclusion of these particular engines in the claimed mortgage lien." *Id.* In these circumstances, the artificer's lien is held to prevail over the government's lien. The Court specifically states that it did not reach the question of whether an artificer's lien could take precedence over a government lien found to be valid as to third parties. *Id.* at 55.

■ Plaintiff argues that *United Aircraft Corporation* was decided long before the Supreme Court decision in *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983)[7] and that Connecticut does not favor "secret" liens. It questions whether a lien such as that claimed by Defendant herein, and by the artificer in *United Aircraft Corporation*, can be valid at this time. However, there is no indication that *United Aircraft Corporation* has been reversed or is otherwise not still valid precedential law, and Plaintiff submits no citation of authority or other evidence to the contrary. Further, contrary to Plaintiff's characterization of Defendant's claimed lien as a "secret lien," Defendant asserts and cites authority for the proposition that the common law provides that the world is put on notice that a repairer may hold an artificer's or artisan's lien on property because the property is being held by a third party rather than its owner. *In re Lott*, 196 B.R. 768, 776 (Bankr.W.D.Mich.1996).

■ Defendant asserts, and Plaintiff does not controvert, that there is no recording requirement to perfect an artisan's

---

7. See discussion, *infra.*

lien in Connecticut. At all times relevant to this case, Connecticut law (Conn.Gen. Stat. § 42a–9–310 (2001)) provided that an artisan's lien for materials or services took priority over a perfected security interest, and current law is to the same effect.[8]

## VI. UNITED STATES CODE PROVISIONS

■ The Federal statutes relied upon by Plaintiff are 49 U.S.C. §§ 44107 and 44108. These statutes provide, in material part, as follows:

§ 44107. **Recordation of conveyances, leases, and security instruments.**

(a) **Establishment of system.** The Administrator of the Federal Aviation Administration shall establish a system for recording—

(1) conveyances that affect an interest in civil aircraft of the United States;

(2) leases and instruments executed for security purposes, including conditional sales contracts, assignments, and amendments, that affect an interest in—

(A) a specifically identified aircraft engine . . . ;

(B) a specifically identified aircraft propeller . . . ;

(C) an aircraft engine, propeller, or appliance maintained for installation or use in an aircraft, aircraft engine, or propeller . . . ; and

(D) spare parts maintained by or for an air carrier . . . ; and

(3) releases, cancellations, discharges, and satisfactions related to a conveyance, lease, or instrument recorded under clause (1) or (2) of this subsection.

. . . .

§ 44108. **Validity of conveyances, leases, and security instruments.**

(a) **Validity before filing.** Until a conveyance, lease, or instrument executed for security purposes that may be recorded under section 44107(a)(1) or (2) of this title is filed for recording, the conveyance, lease, or instrument is valid only against—

(1) the person making the conveyance, lease, or instrument;

(2) that person's heirs and devisees; and

(3) a person having actual notice of the conveyance, lease, or instrument.

. . . .

(c) **Applicable laws.** (1) The validity of a conveyance, lease, or instrument that may be recorded under section 44107 of this title is subject to the laws of the State, the District of Columbia, or the territory or possession of the United States at which the conveyance, lease, or instrument is delivered, regardless of the place at which the subject of the conveyance, lease, or instrument is located or delivered. If the conveyance, lease, or instrument specifies the place

---

8. In 2001, § 42a–9–310 was repealed, and replaced by § 42a–9–333 (similar to § 9–333 of the Uniform Commercial Code, 2000 Revision of Article 9), which in material part is as follows: "Possessory Liens." This section governs the relative priority of security interests arising under this Article and "possessory liens" i.e., common-law and statutory liens whose effectiveness depends on the lienor's possession of goods with respect to which the lienor provided services or furnished materials in the ordinary course of its business. As under former Section 9–310, the possessory lien has priority over a security interest unless the possessory lien is created by a statute that expressly provides otherwise. If the statute creating the possessory lien is silent as to its priority relative to a security interest, this section provides a rule of interpretation that the possessory lien takes priority, even if the statute has been construed judicially to make the possessory lien subordinate.

at which delivery is intended, it is presumed that the conveyance, lease, or instrument was delivered at the specified place.

The determination of whether or to what extent the Federal provisions referred to above are applicable to this case requires a more detailed analysis and discussion.

The leading case in this area, cited by the Plaintiff, is *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983), where the Supreme Court addressed the statutory provisions which are now codified at 49 U.S.C. §§ 44107(a)(1) and 44108(a).[9] The case involved a contest between purchasers of an aircraft with possession who had not recorded the transfer with the FAA under regulations promulgated pursuant to the Federal Aviation Act, and a subsequent purchaser whose transfer was so recorded. The *Philko* Court notes that the primary congressional purpose in enacting these provisions "was to create 'a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft.'" *Philko* at 411, 103 S.Ct. at 2479, 103 S.Ct. 2476 (quoting Hearings before the House Committee on Interstate and Foreign Commerce, 75 Cong., 3d Sess., p. 407 (April 1, 1938) (Testimony of F. Fagg, Director of Air Commerce, Dept. of Commerce)).

After discussion, the *Philko* Court concludes that "every aircraft transfer must be evidenced by an instrument, and every such instrument must be recorded, before the rights of innocent third parties can be affected. Furthermore, because of these federal requirements, state laws permitting undocumented or unrecorded transfers are pre-empted, for there is a direct conflict between [§ 44108(a)] and such state laws, and the federal law must prevail." *Id.* at 409–410, 103 S.Ct. 2478 (citing U.S. Const. Art. VI, cl. 2, and decided cases.)

Plaintiff relies upon *Philko* and upon *South Shore Bank v. Tony Mat, Inc.*, 712 F.2d 896 (3d Cir.1983), which was decided shortly after and also relies upon *Philko*. While Plaintiff contends that these cases each require that "security interests in aircraft and aircraft engines" be recorded with the FAA before they can obtain whatever priority state law would give them, in fact both cases involved the conveyance of aircraft in their entirety, and neither involved or made any reference whatsoever to engines or components separate and apart from the aircraft. In neither *Philko* nor *South Shore Bank* does the Court make any mention of the provision which is now codified at 49 U.S.C. § 44107(a)(2).

Plaintiff also relies upon *Southern Air Transport, Inc. v. Northwings Accessories Corp. (In re Southern Air Transport, Inc.)*, 255 B.R. 715 (Bankr.S.D.Ohio 2000). In that case, Northwings, a corporation in the business of repairing and maintaining spare parts for the aircraft industry, performed certain services for Southern Air Transport, an air freight company, on certain spare parts used in its business, and was not paid for such services prior to Southern Air Transport filing its petition in bankruptcy. Northwings contended that it had a validly perfected and enforceable possessory artisan's lien under Florida statutory law, and that no filing with the FAA was required by it.

The *Northwings* Court first determines that the possessory lien was valid under

9. Sections 503(a)(1) and 503(c) of the Federal Aviation Act of 1958 (derived from the Civil Aeronautics Act of 1938, 52 Stat. 973), then codified at 49 U.S.C. §§ 1403(a)(1) and 1403(c).

Florida law. *Id.* at 718. It then reviews the Supreme Court decision in *Philko*, including the discussion of the legislative purpose behind the FAA recordation requirements. The *Northwings* Court then notes that numerous cases since *Philko* have held that mechanic's liens *against aircraft* are subject to the FAA filing requirements.

The *Northwings* Court cites *Danning v. Pacific Propeller, Inc. (In re Holiday Airlines Corporation)*, 620 F.2d 731 (9th Cir. 1980), *cert. denied*, 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 130 (1980), in which the Court was dealing with a statutory artisan's lien filed with the FAA against an entire aircraft in which a propeller overhauled by the lienholder had been reinstalled.[10] The Court in that case first determined that artisans' liens were within the ambit of the Federal Aviation Act and its recording requirements, referring to the language of now 49 U.S.C. § 44107(a)(2) and 14 C.F.R. §§ 49.41 and 49.51.[11]

The *Pacific Propeller* Court then states: "It is not clear how liens that arise by operation of law, and not by the agreement of the parties (and thus without an 'instrument' that is 'delivered'), fit within the scope of Section 1406, [the choice of law provision now codified at 49 U.S.C. § 44108(c) ] if indeed they fit at all." *Pacific Propeller, Inc.*, 620 F.2d at 735. In the circumstances before the Court in that case, it was not necessary to address that issue further.

The *Northwings* Court also cites *Avair, Inc. v. Fairchild Aircraft Corporation (In re Avair, Inc.)*, 98 B.R. 261 (Bankr. W.D.Va.1988), which held that *security agreements* affecting spare aircraft parts must also be filed with the FAA.

Neither *Pacific Propeller* nor *Avair* is dispositive, or even particularly helpful, in determining the issues before this Court in the case at bar.

The *Northwings* Court then rejects cases cited by Defendant Northwings which pre-dated *Philko*, and determines that Northwings' lien was required to be filed with the FAA in order to be perfected and enforceable. Having not been so filed, the lien is held to be invalid against a hypothetical *bona fide* purchaser and therefore avoidable under the "strong-arm" powers granted by §§ 544 and 545 of the Bankruptcy Code.[12] In effect, the *Northwings* Court holds that the non-consensual, possessory lien on spare parts in that case was subject to filing and recordation with the FAA just as though it had been an instrument or document evidencing the conveyance of an aircraft. *Northwings*, 255 B.R. at 724.

In the case at bar, Defendant recognizes *Northwings* as authority contrary to Defendant's position, and asserts that it was wrongly decided and therefore not persuasive and that it should not be followed.[13] Furthermore, Defendant asserts that the *Northwings* Court was not advised of and therefore did not consider certain alleged FAA procedures and practices, described and discussed hereafter, which would have prevented the filing or recordation of notice of the non-consensual lien held by that

---

**10.** The statute creating the lien in that case did not require the lienholder to retain possession of the property upon which the lien was claimed.

**11.** See discussion, *infra*.

**12.** See note 6, *supra*.

**13.** The *Northwings* Court states that it is the first to address the FAA recording requirement for statutory possessory liens affecting spare aircraft parts. This Court has found no other cases before or since *Northwings* addressing this particular issue.

case to have been required, even if an attempt to file the same had been made.[14]

In *Northwings*, the Court quotes from the legislative history of 1948 amendments to what was then the Civil Aeronautics Act (now the Federal Aviation Act). *Id.* at 723. Those amendments provided for, *inter alia*, the recordation of liens on aircraft engines and spare parts, whereas previously only conveyances affecting title to or interests in aircraft had been included in the filing and recordation scheme. The legislative history makes it clear that the primary purpose of the amendments was to facilitate the financing of the purchase of new aircraft. It is noted that additional engines and spare parts must necessarily be included when a new aircraft is purchased, that the cost of such additional items constitutes approximately twenty five percent of the total purchase price, and that the then current law did not permit the recording of liens on engines and spare parts, thus making it difficult to finance the purchase by giving a mortgage on the additional parts. It is these amendments which brought into the Act the provision which is now codified at 49 U.S.C. § 44107(a)(2).

Congress, when it enacted 49 U.S.C. § 44107(a)(2), employed strikingly different language from that which was already present in § 44107(a)(1): "leases and instruments executed for security purposes [which affect an interest in certain engines, propellers, appliances or spare parts] ..." in the former, and "conveyances that affect an interest in civil aircraft ..." in the latter. The term "conveyance" is defined in 49 U.S.C. § 40102(19), as "an instrument, including a conditional sales contract, affecting title to, or an interest in, property." Thus, it is noted that both subsections refer to "instruments."

The regulations promulgated pursuant to these statutory provisions do not assist significantly in resolving the issues before this Court.

In 14 C.F.R. § 49.17(a), it is stated that "[e]ach instrument recorded under this part is a 'conveyance' [as defined in 49 U.S.C. § 40102(19)]." Under 14 C.F.R. § 49.17(d), "conveyances" executed for security purposes and assignments thereof must be, *inter alia*, signed by the debtor. Reading § 49.17 in its entirety, it appears reasonably clear that the provision is referring only to aircraft and not to engines, propellers, components, or spare parts separate from the aircraft itself.

The provisions of 14 C.F.R. § 49.41 apply to the recording of the following kinds of "conveyances": [a]ny lease, a notice of tax lien or other lien ... and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes, which affects title to, or any interest in [a specifically identified aircraft engine or propeller]" or any assignment, amendment, supplement, release, cancellation, discharge, or satisfaction of the same. The identical descriptive language is employed in 14 C.F.R. § 49.51 with respect to instruments involving aircraft engines, propellers, or appliances maintained by or on behalf of a certified air carrier for installation or use in aircraft, aircraft engines or propellers, or any spare parts, maintained at a designated location or locations by or on behalf of such air carrier, and again, any assignment, etc., thereof.

The *Northwings* Court refers to the language of 14 C.F.R. § 49.51 and states that

---

**14.** Defendant asserts that, in a later case, the *Northwings* Court took under advisement a request that it reconsider the *Northwings* decision, but that to date, almost two and one-half years later, no ruling has been issued.

"[t]he Administrator of the FAA found it proper to establish an expansive definition of 'conveyance' to comply with Congressional intent." *Northwings*, 255 B.R. at 722. The Court states that

> [w]hile the language of 49 U.S.C. § 44107(a)(2) refers to "leases and instruments executed for security purposes," when read together with its implementing regulations, it becomes apparent that notice of possessory liens against spare parts must be filed with the FAA. 49 U.S.C. § 44107(a) simply directs the Administrator of the FAA to establish a system for recordation. The Code of Federal Regulations contains the recordation requirements called for by the statute, and contains a very expansive definition of the types of "conveyances" that must be recorded with the FAA.

*Id.* at 723.

The *Northwings* Court then states that 14 C.F.R. § 49.51 "clarifies the requirement that all notices of liens, including mechanic's liens against aircraft, engines, and spare parts, are 'conveyances' subject to the mandatory FAA recording requirement." *Id.*

These regulations, according to Plaintiff and to the *Northwings* Court, require that the term "conveyance" be applied interchangeably with various instruments, including instruments executed for security purposes, and that it be construed to describe liens which are not instruments at all.[15] As will be discussed hereafter, the staff of the FAA and its filing and recordation Registry does not agree with this construction.

If Congress had wanted to put engines, propellers and spare parts on the same footing as aircraft in their entirety, it could easily have done so. When providing for recordation of interests in engines, propellers and spare parts, however, it chose to place the requirement in a separate subsection and to describe what is required to be recorded, not as "conveyances," but as "leases and instruments executed for security purposes." Non-consensual, common law, possessory liens on engines, propellers and spare parts are not "conveyances" as that term is defined in 49 U.S.C. § 40102(19). Neither are they leases or instruments, as those terms are commonly understood. They are not even executed for security purposes.

Defendant asserts correctly that the striking differences in the language employed in § 44107(a)(1) and (a)(2) make it clear that Congress intended a different scope and application for the two provisions. It is difficult to read "conveyances" and "leases and instruments executed for security purposes" as equivalent or synonymous. The former is a defined term, and the latter defines itself. Unfortunately, Plaintiff and the *Northwings* Court do not recognize the distinction between the two.

In support of its contentions, Defendant submits with its Motion for Summary Judgment the affidavit of Joseph R. Standell, Aeronautical Center Counsel of the Aeronautical Center in Oklahoma City, Oklahoma, the agency which, *inter alia,* provides a facility for and administrative support to the FAA's Civil Aviation Registry (the "Registry"). In his affidavit, Mr. Standell asserts that he had served in his

---

**15.** The *Northwings* Court did not address or question whether the Administrator of the FAA had the power or authority under the Federal Aviation Act to adopt regulations employing a "very expansive definition" of a term already specifically defined in that Act, particularly a definition inconsistent with that contained in the statute. Since that issue is not raised by the parties in this case, and in view of this Court's determination of the issues before it, it is not necessary to either raise or decide it.

current capacity since 1982 and had been employed by the FAA since 1962. He asserts that to the best of his knowledge the Registry has never accepted for recordation mechanic's or artisan's liens on engines, propellers or spare parts. (Joseph R. Standell Affidavit, at 3) In support of this assertion he submits two documents. The first is a memorandum written by Mr. Standell in 1986 to the Manager of the Aircraft Registration Branch of the FAA, in which he concluded that the Federal Aviation Act of 1958 did not authorize the Registry to accept artisan's or mechanic's liens on engines, propellers, and spare parts. The second document is a letter written by Mr. Standell in 1993 responding to an inquiry regarding the effect of *Philko* on the recordation of non-consensual liens against aircraft engines, where he concluded that *Philko* concerned only what is now 49 U.S.C. § 44107(a)(1), that it "shed no light" on subsection (a)(2), and that he remained of the opinion that the latter provision did not authorize the recordation of non-consensual liens on engines, propellers, or spare parts. Finally, Mr. Standell opines in his affidavit that such liens would not today be accepted for recordation and that the longstanding position of the FAA in that regard was a matter of common knowledge within the aircraft maintenance, service and repair industry.[16] (Standell Affidavit, at 4)

Plaintiff responds to Mr. Standell's affidavit by asserting that his opinions are not adjudicated regulations promulgated by the FAA, do not constitute the FAA's construction of its governing statute, and are entitled to no deference by the Court. (Trustee's Brief, at 12) While Plaintiff urges this Court to not grant deference to or consider Mr. Standell's assertions, it offers no affidavit, evidence, or argument whatsoever in support of the proposition that those assertions do not in fact represent the position of the FAA and its Registry with regard to non-consensual, non-statutory, possessory liens on, *e. g.*, aircraft engines, such as the lien claimed by Defendant herein. Similarly, Plaintiff does not assert or offer any evidence or argument to the effect that had Defendant attempted to file notice of its lien with the FAA, the same would have been accepted for filing and recordation.

This Court therefore concludes that such liens as are claimed by Defendant herein, are not required to be filed and recorded under either 49 U.S.C. § 44107(a)(1) or 49 U.S.C. § 44107(a)(2) in order to be perfected and enforceable against third parties.

## VII. *CONCLUSION*

This Court holds that Defendant has a valid possessory lien for the value of its labor and materials against the aircraft engine in question here, and that such lien has been perfected by Defendant's maintenance of continuous possession of the engine at all relevant times. This Court further holds that Defendant's lien, being fully perfected, takes priority over any hypothetical lien of the Trustee as described in §§ 544 and 545. As was set forth above, this Court is also of the opinion that Defendant's lien was not required to be filed or recorded with the FAA under the provisions of 49 U.S.C. §§ 44107(a)(1) or 44107(a)(2) or under any other provision of the Federal Aviation Act. Thus, Defendant was fully secured by its lien, and it did not receive more than it would have received in a Chapter 7 liquidation, and the complaint fails because it

---

**16.** It is noted that the FAA does accept for recordation, artisan's liens on *aircraft* from states which have statutes authorizing their recording, and that it has periodically published legal opinions in the Federal Register of those states from which such liens will be accepted for recordation by the Registry. *See, e.g.,* 58 FR 50387 (September 27, 1993)

does not meet the requirements of § 547(b)(5).

Based upon the foregoing, the Motion for Summary Judgment filed by Defendant, Pratt & Whitney (a United Technologies Corp.) is granted, the Cross–Motion for Summary Judgment filed by Plaintiff, Charles A Stanziale, Jr., as Chapter 7 Trustee for the Bankruptcy Estate of Tower Air, Inc., is denied. Judgment will therefore be entered in favor of Defendant and against Plaintiff.

This Court does not believe that its decision in this case will have the catastrophic results apparently envisioned by Plaintiff. Liens such as that claimed by Defendant arise out of relatively short periods of possession by artisans of aircraft parts, for the purpose of repair, maintenance, overhaul and the like. A prospective purchaser or one proposing to finance the purchase of such property would be on notice, or at least would be expected to inquire as to the location of any such property not in the possession of the carrier, seller, or then current owner. Its presence in the hands of an artisan should alert any such person to the possible existence of a possessory lien, and to the likelihood that the cost of the artisan's services would have to be paid before possession could be reacquired. Similarly, holders of prior liens should have no complaint, since all that is required to satisfy the lien is payment of the artisan for the services which undoubtedly enhanced the value of the property.

■ This is a small price to pay to protect the artisan from the loss of the value of its services. In the absence of specific language in the governing statute, or at least sufficiently broad language to support specific regulatory provisions, artisans should not be required to file notices of such liens, or to search the records of the FAA before accepting property upon which to perform labor or supply materials in order to protect themselves from prior, or intervening perfected liens, or from bankruptcy trustees seeking to prevail by application of the "strong-arm" provisions of the Bankruptcy Code.

The legislative purpose of the filing and recordation requirements, as described and interpreted in *Philko* and its progeny will likewise not be disturbed by this ruling. Conveyances, as that term is defined in the statute, of aircraft, and instruments executed for security purposes covering engines, propellers and spare parts to the extent provided for in 49 U.S.C. §§ 44107(a)(1) and (2), respectively, are not affected hereby. Furthermore, this Court is not called upon and does not decide whether a lien such as that claimed by Defendant could attach to an aircraft in its entirety and defeat a prior or intervening lien.

An appropriate order and judgment will be entered concurrently herewith.

### ORDER (I) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, (II) ENTERING JUDGMENT IN FAVOR OF DEFENDANT, AND (III) DENYING CHAPTER 7 TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

Upon consideration of the Cross–Motions for Summary Judgment filed by the parties in the above-captioned adversary proceeding and the opposition thereto

**IT IS HEREBY ORDERED** for the reasons set forth in the Court's Memorandum Opinion of this date, Defendant Pratt & Whitney's Motion for Summary Judgment is **GRANTED**, and Judgment shall be entered in favor of Pratt & Whitney.

**IT IS FURTHER ORDERED** that the Chapter 7 Trustee's Motion for Summary Judgment is **DENIED**.